519 A.2d 507

**Lisa REIDER, Appellant,**

v.

**Frank A. MARTIN, John Brzyski and J.T.B. Associates, a partnership, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1986.

Filed Jan. 5, 1987.

Daniel K. McCarthy, Allentown, for appellant.

Edward J. McKarski, Easton, for appellees.

Before McEWEN, DEL SOLE and TAMILIA, JJ.

DEL SOLE, Judge:

During the academic year of 1982–1983, Appellant, a Lehigh University senior, rented one of three apartments located at 28 East Third Street, Bethlehem, Pennsylvania, owned by Appellees. On or about February 4, 1983, Appellant was raped, beaten, and robbed in the stairway outside her apartment. The perpetrator, one Melvin Dean Smith, had entered the building through an unsecured front door

and followed Appellant up the stairs as she entered her apartment building.[1]

Appellant commenced this civil action for damages, alleging that Appellees were negligent in failing to supply the apartment building with an operative front door lock. On numerous occasions prior to the February 4, 1983 incident, Appellees were informed by Appellant and other tenants that the front door lock of the building was inoperative and requested that the lock be repaired or replaced. In response, Appellees notified their tenants that the necessary repairs and/or replacements would be performed. Despite these repeated assurances, the lock remained in disrepair up to the night of the rape and assault. Appellant contends that, as a result of Appellees' negligence, she sustained severe psychological injuries, humiliation, pain and suffering, loss of income and deprivation of life's pleasures.

A jury trial commenced on April 22, 1985 in which Appellant was ordered to first present her case on liability. Two days of testimony were presented on Appellees' notice of the defective lock, their assurances that they would repair the lock, and their failure to do so. Following this testimony, Appellees presented before the trial court a Motion for Compulsory Nonsuit. Thereafter, the nonsuit was granted based upon the court's interpretation of the case of *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984). In *Feld*, our Supreme Court held that no general duty of a landlord exists to protect tenants against criminal instrusion; however, if a landlord agrees, or voluntarily proffers protection in order to attract or keep tenants, the landlord may incur such a duty. *Id.* at 506 Pa. 392–394, 485 A.2d 747.

Appellant filed a Motion for Post-Trial Relief on May 2, 1985 which requested the trial court to remove the nonsuit. Appellant's Motion for Post-Trial Relief was subsequently denied by Order of Court on January 13, 1986. This appeal follows.

---

**1.** Melvin Dean Smith was tried and convicted of rape, assault and armed robbery, and was sentenced to a prison term of 12–24 years.

Appellant advances before this Court two charges of error allegedly committed by the trial court. First, Appellant contends the trial judge improperly interpreted the applicability of *Feld v. Merriam, supra,* in relation to the facts of the instant case. Second, Appellant claims the trial judge abused his discretion in granting Appellees' various motions in limine.

Our scope of review for determining whether a compulsory nonsuit should have been granted is well established. A judgment of nonsuit may be entered only in clear cases and a plaintiff must be afforded the benefit of every fact and reasonable inference arising from the evidence. Likewise, all conflicts in the testimony must be resolved in the plaintiff's favor. *McNally v. Liebowitz,* 498 Pa. 163, 171, 445 A.2d 716, 719 (1982). "Thus an order granting a nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it, in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action have been established." *Morena v. South Hills Health System,* 501 Pa. 634, 638, 462 A.2d 680, 683 (1983) (citations omitted).

## I. Application of *Feld v. Merriam.*

Because this is the first time in which we are specifically called upon to interpret the impact of *Feld,* we shall synopsize both the procedural and substantive aspects of that case. The *Feld* case involved a married couple who were tenants in a large apartment complex owned by defendant-owners. One evening the Felds were parking their car in a garage adjacent to the apartment buildings when they were set upon by three armed felons. The felons forced the couple into a car, and, after releasing Mr. Feld on a deserted street corner, drove to the lonely precincts of a country club where they assaulted Mrs. Feld.

The Felds brought suit against the defendant-owners alleging a duty of protection owed by the landlord, the breach of such duty, and injuries resulting therefrom. Following an eight-day trial, the jury returned a verdict in favor of the Felds. The defendant-owners filed post-trial

motions for a new trial, judgment n.o.v., and remittur, which were subsequently denied. On appeal, this court affirmed the trial court, with the exception that punitive damages awarded were reduced by one-half.

On review by our Supreme Court, it was noted that the issue presented in that case was one of first impression. The question addressed was "whether a landlord has any duty to protect tenants from the foreseeable criminal acts of third persons, and if so, under what circumstances." *Id.* at 506 Pa. 392, 485 A.2d 745. In arriving at its conclusions, the court noted a distinction between the risk of injury from a physical defect in the property, and the risk from the criminal act of a third person:

> In the former situation the landlord has effectively perpetuated the risk of injury by refusing to correct a known and verifiable defect. On the other hand, the risk of injury from the criminal acts of third persons arises not from the conduct of the landlord but from the conduct of an unpredictable independent agent. To impose a general duty in the latter case would effectively require landlords to be insurers of their tenants safety: a burden which could never be completely met given the unfortunate realities of modern society.

*Id.* at 506 Pa. 392, 485 A.2d 746.

The court, however, opined that this general rule is not without exception. Relying upon the Restatement (Second) of Torts § 323, the court stated that "where a party assumes a duty, whether gratuitously or for consideration, and so negligently performs that duty that another suffers damages," liability may be imposed.[2] *Ibid.*

---

**2.** § 323. Negligent Performance of Undertaking to Render Services.
   One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

   (a) his failure to exercise such care increases the risk of such harm, or

   (b) the harm is suffered because of the other's reliance upon the undertaking.

The court next applied the newly-generated rule, and its exception, to the *Feld* circumstances and held that:

> [a]bsent therefore an agreement wherein the landlord offers or voluntarily proffers a program, we find no general duty of a landlord to protect tenants against criminal intrusion. However, a landlord may, as indicated, incur a duty voluntarily or by specific agreement if to attract or keep tenants he provides a program of security. A program of security is not the usual and normal precautions that a reasonable home owner would employ to protect his property. It is, as in the case before us, an extra precaution, such as personnel specifically charged to patrol and protect the premises.

*Id.* at 506 Pa. 393–394, 485 A.2d 747.

It is on this last excerpt of the *Feld* opinion which the trial judge based his decision to grant a compulsory nonsuit. By its opinion, the trial court found that no duty existed on the part of Appellees inasmuch as no "program of security", as defined in *Feld*, was promised:

> The installation of a front door lock is nothing more than a reasonable homeowner would do to protect his property. It is not an extra precaution. . . . The Supreme Court did not intend to impose a duty on a landlord who negligently undertakes the performance of normal security precautions. The essence of the *Feld* case is that the landlord must somehow hold himself out as a provider of security to a prospective tenant through a program providing extra precautions. Only when a landlord holds himself out as such, and negligently fails in his undertaking, can he be found liable for criminal acts inflicted upon his tenants. (Trial Court Opinion, p. 5).

The trial court thereby concluded that Appellant merely alleged an unenforceable promise by Appellees to repair the front door, instead of an agreement between the parties calling for a "program of security".

We disagree and find the trial court rendered a too narrow interpretation of the phrase "program of security". The trial court mistakenly found Appellant had the burden

of proving that Appellees held themselves out as "providers of security". Likewise, the trial court held that a landlord's duty does not rise to such status unless he/she undertakes extra precautions, "such as video monitors, security guards, or an alarm system." (Trial Court Opinion, p. 5). Although the Supreme Court commented that an *example* of an extra precaution would be "personnel specifically charged to patrol and protect the premises," it in no way indicated that all security systems must be of a complicated nature. Rather, the court recognized that a bona fide security systems could range from being the most rudimentary devices to being elaborate programs of safety:

> A tenant may rely upon a program of protection only within the reasonable expectations of the program. He can expect, however, that the program will be reasonably pursued and not fail due to its negligent exercise. . . . A tenant may not expect more than is offered. . . . He can only expect the benefits reasonably expected of the program as offered and that that program will be conducted with reasonable care.

*Id.* at 506 Pa. 394, 485 A.2d 747.

 From our reading of *Feld*, we find that the touchstone in determining if a "program of security" exists is whether or not the program promises to provide an additional factor of safety. This is a *substantive* analysis. By comparison, the trial court's reasoning is awry insofar as it lends too much emphasis to the *form* of the security system and whether it involves hired security personnel or utilizes mechanical wizardry.

 At first blush, a secured outside door seemingly does not amount to a "program of security". However, we find that the impact of safety resulting therefrom places this precaution squarely within the definition of a security program as enunciated by our Supreme Court. Initially we note that Appellees clearly had no preexisting duty to supply their tenants with a functional front door lock. Appellees, however, "assumed the duty" by consistently promising to remedy the situation, thereby fostering a

possible "reliance by [their] tenants on [their] efforts." *Id.* at 506 Pa. 394, 485 A.2d 747.[3] By agreeing to make the necessary repairs to the outside door, Appellees tacitly agreed to provide the tenants with a method by which they could have monitored those people who gained access to the interior of the apartment building. The locked front door would have been an assurance that those who knocked on the front door to gain ingress, and who were subsequently admitted, were indeed invited guests of the tenants.

Albeit there was no agreement to hire security personnel or to install an electronic alarm system, this does not detract from the fact that Appellees agreed to supply the additional protection of a locked exterior door which the locks installed on each apartment unit's door surely could not provide. It is evident that by failing to make the necessary adjustments to the lock, Appellees denied their tenants the greatly enhanced level of security that such an elementary undertaking would have provided.

In keeping within the mandates of *Feld,* we note that Appellant could only expect the same quality and type of protection that the second locked door would have provided and nothing more. However, Appellees did not supply these benefits which Appellant had a right to reasonably anticipate.

Accordingly, we hold the trial judge erred by granting Appellees' motion for compulsory nonsuit. Instead we find that the jury should have been allowed to determine whether Appellees undertook the duty to provide the locked door, whether Appellees breached this duty, and whether such failure was a substantial factor in bringing about the harm to Appellant.

## II. Motions in Limine.

Finally, Appellant objects to the trial judge's granting of various motions in limine. In light of the issue concerning

---

**3.** We recognize too that Appellees' promises, as applied to the directives of the Restatement (Second) of Torts § 323, would lead to the conclusion that Appellees assumed a duty of care.

Appellees' duty to Appellant, we decline to reach the merits of these arguments.

Order of Court vacated. Case remanded to the trial court for proceedings consistent with this opinion. Jurisdiction of this court relinquished.