Keumsoon HONG, M.D., Appellant,

v.

Gustine PELAGATTI and Pelagatti
& Bruccoleri, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 5, 1999.
Filed Dec. 6, 2000.
Reargument Denied Feb. 12, 2001.

Elizabeth K. Ainslie, Philadelphia, for appellant.

Jeffrey Albert, Philadelphia, for appellee.

Before DEL SOLE, KELLY, and HUDOCK, JJ.

DEL SOLE, J.:

¶ 1 Appellant, Keumsoon Hong, M.D., asks us to determine whether the trial court erred when it denied her motion to remove a compulsory nonsuit entered following the presentation of her plaintiff's case-in-chief. We hold that the denial of the motion to remove the compulsory nonsuit was proper. Accordingly, we affirm the order denying Appellant's motion to remove the nonsuit.

¶ 2 The relevant facts and procedural history are as follows. Appellee filed a medical malpractice action against Appellant, on behalf of Mr. and Mrs. Lee and their infant son. Appellee, on behalf of the Lees, alleged that the Lees' infant son sustained severe, serious, and permanent brain damage as a result of Appellant's negligence. Prior to trial in the *Lee* medical malpractice matter, Appellee consulted with two experts, who gave a medical opinion that Appellant's co-defendant, Rolling Hill Hospital, was negligent in delaying treatment for Mrs. Lee. The second expert, however, did not render any opinion as to the actions of Appellant, the treating physician. With respect to the allegations that Appellant failed to alert the hospital or to appear at the hospital, the expert claimed these allegations were outside his area of expertise, which was limited to the treatment of a patient once the patient is in the hospital. Appellee later obtained a report from another expert, Dr. Levbarg, which was critical of Appellant's actions. Due to certain time constraints, Appellee claimed Dr. Levbarg dictated his report over the phone to Appellee, and authorized Appellee to sign the doctor's name to the report. Dr. Levbarg died before trial, and Appellee secured yet another expert's services.

¶ 3 The *Lee* medical malpractice case proceeded to trial and both Appellant and Appellee introduced expert testimony regarding the medical malpractice claim. The jury returned a verdict in favor of Appellant.

¶ 4 Appellant instituted an action for wrongful use of civil proceedings [1] against Appellee and his law firm on February 27, 1997. In her complaint, Appellant alleged that Appellee was grossly negligent and

---

1. § 8351. **Wrongful use of civil proceedings**
   (a) **Elements of action.** A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
   (1) He acts in a grossly negligent manner or without probable cause and primarily for

a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
(2) The proceedings have terminated in favor of the person against whom they are brought.
42 Pa.C.S.A. § 8351.

lacked probable cause to initiate and continue the medical malpractice case. Appellant also asserted that the expert report of Dr. Levbarg was neither generated nor signed by the expert. Upon being confronted with the expert handwriting and textual analysis of Dr. Levbarg's report, Appellant claimed, Appellee simply produced a new expert report indicating that Appellant was negligent for failing to call ahead to the hospital to expect the Lees' arrival. As part of her claim, Appellant suggested that Dr. Levbarg's expert report had been fabricated. Appellant requested damages for expenses incurred in defense of the medical malpractice case, lost wages, reasonable attorney's fees, and severe emotional distress. Appellant requested compensatory damages in excess of $50,000.00, punitive damages, interest and costs. In response, Appellee filed preliminary objections in the nature of a demurrer to the legal sufficiency of the complaint. The gist of the demurrer was that the *Lee* medical malpractice case would not have been allowed to go to the jury if the medical report used at trial had been deficient. On that basis, Appellee concluded, there was no liability for wrongful continuation of the *Lee* case.

¶ 5 Appellee further claimed that Appellant had failed to attach the disputed reports to her complaint along with other pertinent materials on which her claim was based. As such, Appellee concluded, Appellant's complaint failed to conform to rules of court.[2] The trial court overruled these preliminary objections.

¶ 6 Following the court's order overruling his preliminary objections, Appellee filed an answer with new matter in which he asserted that, *inter alia,* in accordance with longstanding practice, Dr. Levbarg dictated his report over the phone and authorized Appellee to sign Dr. Levbarg's name; upon the untimely pretrial death of Dr. Levbarg, Appellee secured a report from another expert; and Appellant never challenged the expert report presented at trial in the *Lee* case.

¶ 7 One issue in the present case involved the circumstances under which Dr. Levbarg's report was prepared. At his deposition, Appellee testified that at the time he retained Dr. Levbarg, Appellee was subject to a court order setting a discovery deadline.[3] In light of the impending deadline, Appellee claimed, Dr. Levbarg did not have time to draft and send a written report. Instead, Appellee and Dr. Levbarg agreed that Dr. Levbarg would dictate the report to Appellee over the phone and authorize Appellee to sign Dr. Levbarg's name so that the deadline could be timely met.

¶ 8 Appellant disputed the existence of the discovery order and took the position that the expert deadline was a year and a half later than the deadline as alleged by Appellee.

¶ 9 The case proceeded to trial on October 22, 1998. Appellant began her case with the testimony of Dr. Paul Zamostien, who was offered as an expert in obstetrics and gynecology. Dr. Zamostien stated that he had reviewed Appellant's treatment records of Mrs. Lee, the expert reports from the *Lee* trial, and the complaint in that case. He opined that Appellant's conduct with respect to the Lee pregnancy and delivery was within the applicable standard of care. The court adamantly refused to allow Dr. Zamostien to act as a

---

**2.** Appellee also challenged the constitutionality of the statute, at 42 Pa.C.S.A. §§ 8351–8354, on which Appellant's claim rested. This claim was not pursued on appeal.

**3.** Our review of the certified record makes clear that the parties were each talking about a different expert discovery deadline. The deadline Appellant referenced was the Day Backward Case Management Order deadline of November 1994 for expert witnesses. Appellee's deadline arose out of a discovery motion filed on Appellant's behalf for more specific responses to expert witness interrogatories. As a result of that motion, Appellee ordered to produce more specific responses to Appellant's expert witness interrogatories by April 1993, or suffer sanctions.

"super expert" and render an opinion on the adequacy of the expert reports tendered in the medical malpractice case. The court reasoned that all of Dr. Zamostien's opinions were not relevant in the present case for wrongful use of civil proceedings, although his opinions might have been relevant and appropriate in the medical malpractice case.

¶ 10 Next, Delores Figueroa testified. In August 1993, Ms. Figueroa became involved as counsel in Appellant's defense in the *Lee* medical malpractice case. She testified to Appellant's emotional state during the *Lee* case and to the fees generated as a result of Appellant's defense. Ms. Figueroa also explained to the jury the nature and effect of an expert witness cutoff date in the context of a Day Backward case management order. She confirmed that the case management deadline for expert witnesses in the *Lee* case had been November 14, 1994. She was evasive, however, with respect to whether the Lees had to answer expert witness interrogatories by an earlier date, pursuant to a defense *motion to compel more specific* answers to its expert witness interrogatories.

¶ 11 Before trial resumed the next day, Appellee secured a copy of the motion court discovery order and Appellant's own motion requesting that order. The order dated October 21, 1992, required specific responses to expert witness interrogatories within 180 days, or by April 1993, which was certainly long before the Day Backward deadline proposed by Appellant as the only expert witness deadline. The parties stipulated only to the authenticity of the discovery order. The discovery order and motion were then marked as Defense Exhibit 10.

¶ 12 Trial resumed. Appellant's counsel began by reading selected excerpts from Appellee's deposition testimony, including questions and answers concerning the circumstances surrounding the preparation of Dr. Levbarg's report. These excerpts essentially emphasized the existence of a discovery deadline, which necessitated the dictation of Dr. Levbarg's report and authorization to sign it. Next, Appellant presented the testimony of Gerald Zatuchni, M.D., which had been videotaped for trial.[4] Dr Zatuchni was one of the experts originally retained by Appellee in the *Lee* medical malpractice case. Finally, Appellant presented her own testimony.

¶ 13 On cross-examination, counsel for Appellee presented Appellant with the court's discovery order from the *Lee* medical malpractice case, in an effort to discredit Appellant's claim that there had been no discovery deadline other than the general Day Backward expert witness deadline of November 1994. Counsel for Appellee read the order in the course of this cross-examination in this fashion:

[Mr. Albert][5]: Dr. Hong, I show you a court order entered October 21, 1992, stating as follows:

And now, this day, October 21, 1992, upon consideration of the motion of Defendant Keumsoon Hong, M.D. to compel discrete responses to expert witness interrogatories, it is hereby ordered that plaintiff shall provide discrete responses to expert witness interrogatories within 180 days of the date of this order or suffer sanctions.

Is it your attorneys who secured this order on your behalf?

Ms. Ainslie: Objection. She hasn't even got a copy of it.

The Court: I think counsel must stipulate that that is so.[6]

---

4. Neither the videotape nor a transcription of Dr Zatuchni's testimony has been provided in the certified record on appeal to this Court.

5. Mr. Albert represented Appellee in the instant case; Ms. Ainslie represented Appellant.

6. This exchange is unclear as to what counsel must stipulate, as the authenticity of the order was not at issue. We presume counsel was asked to stipulate that Appellant's defense attorney had secured the discovery order on Appellant's behalf.

Ms. Ainslie: Of course, absolutely.

The Court: And that 180 days from October what?

Ms. Ainslie: Objection, Your Honor. That's not part of the question.

The Court: You just read the order, didn't you?

Mr. Albert: Yes, I did.

The Court: What does the order say?

Mr. Albert: 180 days from the date of its entry, which appears to be October 21, 1992.

The Court: All right.

N.T. Trial, 10/23/98, at 106–07. On cross-examination, Appellee's counsel also reviewed with Appellant the motion to compel filed on her behalf that resulted in the specific discovery order. The order itself was not formally offered into evidence at that time. Following Appellant's testimony, her case rested.

¶ 14 At the conclusion of Appellant's case, Appellee moved for a compulsory nonsuit, which the trial court granted. Appellant duly filed her motion to remove the nonsuit, which the court denied. The trial court reasoned that the discovery order was not a necessary basis for the grant of the nonsuit; the discovery order is part of the docket and the court could have taken judicial notice of it at any time; the order flatly contradicts Appellant's position that there was no expert deadline. *See* Trial Court Opinion, dated March 24, 1999, at 6. This timely appeal followed.

¶ 15 Appellant raises the following issues for our review:

IN THIS ACTION FOR WRONGFUL USE OF CIVIL PROCEEDINGS, DID THE TRIAL COURT ERR IN CONCLUDING THAT, GIVING THE [APPELLANT] THE BENEFIT OF ALL REASONABLE INFERENCES ARISING FROM THE EVIDENCE, THE [APPELLANT] HAD FAILED TO MAKE OUT A *PRIMA FACIE* CASE AGAINST [APPELLEE] ATTORNEYS?

WAS ENTRY OF A COMPULSORY NONSUIT IN ANY EVENT IMPROPER, WHERE, AS HERE, THE [APPELLEES] HAD INTRODUCED EVIDENCE?

Appellant's Brief at 2.

¶ 16 Our scope and standard of review when determining the propriety of an entry of nonsuit is well settled:

A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiffs' evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury. When this Court reviews the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered.

*Poleri v. Salkind,* 453 Pa.Super. 159, 683 A.2d 649, 653 (1996), *appeal denied,* 548 Pa. 672, 698 A.2d 595 (1997) (internal citations omitted). "A compulsory non-suit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff." *Id. See also Reider v. Martin,* 359 Pa.Super. 586, 519 A.2d 507, 509 (1987), *appeal denied,* 517 Pa. 594, 535 A.2d 83 (1987).

¶ 17 Appellant first contends that the trial court erred in concluding that Appellant had failed to make out a *prima facie* case against Appellee. In explaining the basis for granting the nonsuit, the trial court stated:

... the totality of the evidence presented in [Appellant's] case indicates that [Appellee] was acting to further the

rights of Mr. and Mrs. Lee to pursue a medical malpractice action against Dr. Hong. The trial record is devoid of any evidence of an improper purpose by [Appellee] or any lack of probable cause.

Trial Court Opinion, 3/24/99, at 6–7. In response to Appellant's argument that Appellee was under a duty to verify the accuracy of his client's representation by speaking to Appellant, the court stated:

Such a notion is not only impractical but would never have received a response from Dr. Hong. Moreover, such a requirement would work a chilling effect on the attorney-client relationship.

Trial Court Opinion, 3/24/99, at 7.

¶ 18 We agree with the trial court's assessment in this matter. It is apparent from the record that the Appellant did not establish the necessary elements to maintain a cause of action for wrongful use of civil proceedings. Accordingly, we conclude that the trial court did not err in holding that Appellant failed to make out a *prima facie* case, and therefore, entry of nonsuit was appropriate.

■ ¶ 19 Appellant next contends that entry of the compulsory nonsuit was improper because Appellee had introduced evidence. Appellant claims that a court order, marked as a defense exhibit and read into the record at Appellee's urging during the presentation of Appellant's case-in-chief constituted the presentation of defense evidence. Appellant insists that the use of the order at this stage of the proceedings was improper if Appellee intended to move for compulsory nonsuit. Further, the court's consideration of that order in deciding to grant the compulsory nonsuit and to deny the motion to remove the nonsuit was likewise procedurally improper. Appellant contends that the trial court erred in granting the nonsuit and in denying her motion to remove the nonsuit. We disagree.

7. This rule was amended April 12, 1999, effective July 1, 1999. The prior version set forth above applies to the present case, as

■ ¶ 20 Pennsylvania Rule of Civil Procedure 230.1 states in pertinent part:

**RULE 230.1 COMPULSORY NONSUIT AT TRIAL**

In a case involving only one defendant, at the close of plaintiff's case on liability and before any evidence on behalf of the defendant has been introduced, the court, on the oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief.... If the motion is granted, the plaintiff may file a written motion for the removal of the nonsuit.

Pa.R.C.P. 230.1 (adopted Oct. 19, 1983, effective Jan. 1, 1984).[7] A defendant's right to request a nonsuit is premised upon the defendant's offering no evidence, and a trial court cannot grant a nonsuit after the introduction of evidence by the defendant. *Lonsdale v. Joseph Horne Co.*, 403 Pa.Super. 12, 587 A.2d 810, 816 (1991), *appeal denied*, 528 Pa. 637, 598 A.2d 994 (1991).

¶ 21 In the instant case, the parties stipulated pretrial to the authenticity of the discovery order at issue. During Appellant's case-in-chief, Appellee's counsel used the order to highlight an inconsistency in Appellant's case. The details of the order were read by Appellee's counsel and the court asked clarifying questions with respect to the order. At this point, the parties stipulated to the order. The actual exhibit, however, was not formally introduced into evidence. The order established the discovery deadline.

¶ 22 A review of the record and arguments presented for and against Appellee's motion for compulsory nonsuit establishes that Appellant never objected to the grant of a nonsuit on the basis that Appellee had introduced evidence during her case.

■ ¶ 23 A motion to remove a compulsory nonsuit is a form of post-trial relief governed by Civil Procedure Rule 227.1.

trial occurred in October 1998, before the effective date of the amended rule. The pertinent part of the rule was not changed.

Pa.R.C.P. 227.1(a). Rule 227.1(b) provides:

> (b) Post-trial relief may not be granted unless the grounds therefore,
>
> (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial;

Pa.R.C.P. 227.1. The note to this section provides:

> *Note:* If no objection is made, error which could have been corrected in pre-trial proceedings or during trial by timely objection may not constitute a ground for post-trial relief.

Pa.R.C.P. 227.1(b) note.

■ ¶24 In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. *Fillmore v. Hill*, 445 Pa.Super. 324, 665 A.2d 514, 515 (1995), *appeal denied*, 544 Pa. 609, 674 A.2d 1073 (1996). Failure to timely object to a basic and fundamental error will result in waiver of that issue. *Id.* at 516, citing *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114, 116 (1974). On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. *Id.* In this jurisdiction since *Dilliplaine* and its progeny, one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter. *Commonwealth v. English*, 446 Pa.Super. 569, 667 A.2d 1123, 1126 (1995).[8]

---

8. *Cagnoli v. Bonnell*, 531 Pa. 199, 611 A.2d 1194 (1992) deals with motions filed prior to trial and not with a motion for compulsory non-suit which, by its very nature, is made during trial at the end of the plaintiff's case.

¶25 Accordingly, while there may be some question as to whether reference to the order during cross-examination amounted to defendant introducing evidence and thereby implicated Pa.R.C.P. 230.1, we need not discuss its implication because the issue is waived for failure to raise it at the first opportunity. After Appellee made the motion for nonsuit, Appellant responded to the motion but did not raise the issue presently before the Court.

¶26 For these reasons, we affirm the trial court's grant of nonsuit and the denial of the motion to remove the nonsuit.

¶27 Order affirmed.

¶28 Judge KELLY files a dissenting statement.

KELLY, J., dissenting:

¶1 I respectfully depart from my esteemed colleagues, as I do not agree that Appellant waived her Rule 230.1 issue for purposes of this appeal. I refer to the case of *Cagnoli v. Bonnell*, 531 Pa. 199, 611 A.2d 1194 (1992). Hence, I dissent.

---

These are usually oral, on the record motions and are argued at that time. *Cagnoli* involved written motions presented prior to commencement of trial.