J-S53031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.W., JR., O/B/O, T.W., III AND T.L.W., MINOR CHILDREN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| M.T.M. | : | |
| | : | |
| Appellant | : | No. 1050 EDA 2018 |

Appeal from the Order Entered March 22, 2018
In the Court of Common Pleas of Northampton County
Domestic Relations at No(s):  C-48-PF-2017-1104

BEFORE:  GANTMAN, P.J., OTT, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED NOVEMBER 20, 2018**

Appellant, M.T.M., appeals from the order entered in the Northampton County Court of Common Pleas, which denied reconsideration of the order granting the Protection From Abuse ("PFA") petitions of Appellee, T.W., Jr. ("Father"), filed against Appellant on behalf of T.W., III, and T.L.W. ("Children"), the minor children of Father and M.D. ("Mother").  We affirm.

In its opinions, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.

Appellant raises the following issues for our review:

> WAS THE ISSUE OF CONSOLIDATION PROPERLY PRESERVED WHERE THE ISSUE WAS RAISED BY THE [TRIAL] COURT *SUA SPONTE* AND [MOTHER] REQUESTED THAT THE MATTERS BE HEARD SEPARATELY?

---

*   Retired Senior Judge assigned to the Superior Court.

DID THE TRIAL COURT ABUSE ITS DISCRETION BY CONSOLIDATING TWO PROTECTION FROM ABUSE CASES WHERE THE CONSOLIDATION PREJUDICED [APPELLANT]?

DID THE TRIAL COURT COMMIT AN ERROR OF LAW BY ADMITTING [FATHER]'S OFFER OF [APPELLANT]'s STATEMENTS?

(Appellant's Brief at 6-7).

The relevant scope and standard of review are as follows: "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." **Stamus v. Dutcavich**, 938 A.2d 1098, 1100 (Pa.Super. 2007) (quoting **Drew v. Drew**, 870 A.2d 377, 378 (Pa.Super. 2005)).

Additionally, "a trial court has broad discretion with regard to the admissibility of evidence, and is not required to exclude all evidence that may be detrimental to a party's case." **Schuenemann v. Dreemz, LLC**, 34 A.3d 94, 102 (Pa.Super. 2011). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or [unduly] prejudicial to the complaining party." **Ettinger v. Triangle-Pacific Corp.**, 799 A.2d 95, 110 (Pa.Super. 2002), *appeal denied,* 572 Pa. 742, 815 A.2d 1042 (2003).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Michael J. Koury, Jr., we conclude Appellant's issues merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions presented. (**See** Trial Court Opinion, filed March 22, 2018, at 9-12; Trial Court

Opinion, filed April 3, 2018, at 1) (finding: **(1-2)** Appellant failed to object to consolidation of PFA petitions before trial court, so Appellant has waived his challenge to consolidation; even if Appellant had not waived his consolidation claim, he would be entitled to no relief; based upon allegations in PFA petitions, court concluded both petitions stemmed from same purported incidents and same evidence was necessary in both cases; **(3)** Appellant failed to make timely and specific objection to hearsay testimony before trial court; initially, Appellant objected to Father's presentation of Mother's statements, which court determined were admissible as statements of party opponent; Appellant made no additional objection to admissibility of Mother's statements; Appellant also failed to object to multiple levels of hearsay Father presented in his testimony; further, Appellant failed to object to testimony of S.R., Children's maternal grandmother, who testified to additional statements of Mother). The record supports the trial court's rationale, and we see no reason to disturb it. Accordingly, we affirm based on the trial court's opinions.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/18

- 3 -

## IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
## COMMONWEALTH OF PENNSYLVANIA
## PFA DIVISION

| | |
|---|---|
| T. W., Jr., o/b/o minors, | **No.: C-48-PF-2017-1104** |
| **Plaintiff,** | |
| **v.** | |
| M. T. M. | |
| **Defendant.** | |

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE
## 1925(a) STATEMENT

**AND NOW**, this 3rd day of April, 2018, the Court issues the following statement:

On April 3, 2018, Defendant, M. T. M., filed and served upon this Court a timely Notice of Appeal to the Superior Court of Pennsylvania from the Order of Court entered on January 3, 2018 and made final by our Opinion and Order of Court entered on March 22, 2018. Together with his Notice of Appeal, Defendant filed a "Concise Statement of Errors Complained of on Appeal." For the reasons set forth in our Opinion and Order of Court entered on March 22, 2018, we respectfully suggest that Defendant's appeal lacks merit and should be dismissed.

BY THE COURT,

MICHAEL J. KOURY, JR., J.

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**
**PFA DIVISION**

*018 MAR 22 PM 2 11*

| | |
|---|---|
| T. W., Jr., o/b/o minors,<br><br>**Plaintiff,**<br><br>**v.**<br><br>M. T. M,<br><br>**Defendant.** | No. C-48-PF-2017-1104<br><br>COMMON PLEAS<br>NORTHAMPTON COUNTY, PA |

## OPINION OF THE COURT

Plaintiff, T.W.,Jr. ("Father"), filed for a Protection from Abuse Order ("PFA")

against Defendant, M. T. M. , on behalf of his two minor children,

T.W., III, and T.L. W. (collectively, "the Children"). Plaintiff

filed a second PFA against the Children's mother, M.D. ("Mother"), in a

separate docket averring nearly identical allegations of abuse. We granted

the PFA with respect to Defendant and dismissed the PFA with respect to

Mother.

This matter is before the court on Defendant's "Motion for

Reconsideration of Protection from Abuse Order Dated January 3, 2018,"

wherein Defendant requests that we vacate the final PFA entered against

him, reinstate the temporary PFA, and set the matter for another hearing.

*See* Defendant's Motion for Reconsideration of Protection from Abuse Order

Dated January 3, 2018, T.W.,Jr., v. M.T.M. . No. C-48-PF-2017-1104 (C.P.

Northampton Co. Jan. 23, 2018) ("Motion for Reconsideration"). We granted

reconsideration and the parties presented argument on Defendant's motion

17

on February 9, 2018. This matter is now ready for disposition.

## BACKGROUND

On December 21, 2017, Plaintiff sought and obtained a temporary PFA on behalf of the Children. *See* Temporary Protection from Abuse Order, T, W.ⱼJr.v, M.T.M., No. C-48-PF-2017-1104 (C.P. Northampton Co. Dec. 21, 2017). He alleged that Defendant had made verbal threats to harm the Children and that Defendant was physically abusive toward his girlfriend, Mother . *See id.* ¶ 9. Plaintiff also obtained a temporary PFA against Mother alleging that Mother placed the Children in imminent harm by allowing Defendant to reside with her and the Children. *See* Temporary Protection from Abuse Order, T.W.ⱼJr. v, M. D. , No. C-48-PF-2017-1103 (C.P. Northampton Co. Dec. 21, 2017).

Plaintiff, Defendant, and Mother appeared for a hearing on January 3, 2018. *See* Transcript of Proceedings of January 3, 2018, T.W.ⱼJr v. M.T.M. No. C-48-PF-2017-1104 (C.P. Northampton Co. Jan. 10, 2018) ("T.P. Jan. 3"). Plaintiff was represented by April L. Cordts, Esq.; Defendant was represented by Michael J. Dohohue, Esq.; and Mother was represented by Al Shirba, Esq. *See id.* at 1.

Given the similar nature of the two PFA petitions, the cases were heard together. *See id.* at 4. Defendant made no objection to consolidation:

> THE COURT: Are we proceeding with a hearing in both
> of these cases?

2

MR. STIRBA: Yes, Your Honor.

MR. DONOHUE: Yes, Your Honor.

MR. STIRBA: They're companion cases, Judge. It's obviously the same plaintiff and I think similar accusations, but it's up to the Court. I have no problem if you want to do them together.

MS. CORDTS: If they're taking the position that it's a common – I think it should be done separately but that's up to the Court.

MR. STIRBA: I would request it be done separately.

MS. CORDTS: If you want to get the prisoner out of here quicker.

THE COURT: Which one are we doing first?

MR. STIRBA: Your Honor, if we can, defendant, *Mother*.

THE COURT: And who is *Father*?

FATHER : Myself.

THE COURT: So you're proceeding?

MS. CORDTS: Yes, Your Honor. *Father* filed on behalf of two minor children.

THE COURT: Okay. Are they here?

MS. CORDTS: The children? No.

MS. CORDTS: The allegations are that there is a custody order. *Mother* has primary physical custody of the two children. *Mother* has been in an on again off again relationship with *M.T.M.*, the second case. It came to my client's attention via statements made to him directly by *Mother* that it had turned into a violent,

3

8.  Mother also told Plaintiff that Defendant had threatened to kill the Children and then kill Mother. *See id.* Mother informed Plaintiff that she and Defendant fought with each other frequently in front of the Children. *See id.* at 10. Mother told Plaintiff that she intended to end her relationship with Defendant after the December 1, 2017 incident. *See id.* at 9. Later, Plaintiff learned from Mother's family that Mother had resumed co-habitating with Defendant. *See id.*

Plaintiff called S. R., the Children's maternal grandmother and Mother's mother, to testify. *See id.* at 25. S.R. testified that, on December 9, 2017, Mother had confided in her that Defendant had threatened to harm her and the Children:

> Q. And specifically did your daughter make you aware at some time of some issues in the relationship between herself and M.T.M. ?
>
> A. Yes, she did.
>
> Q. And what concern – what did she indicate to you?
>
> A. On November 16th she left him. She came into my house and she gave him a certain time to be out. At which time then she went back. She went back that day. She called me repeatedly crying. She's – I mean, she's repeatedly having issues and she left him on December 1st. She went to Father's house. On December 8th she came to my nouse. She said he had three days to get out, until Sunday, December the 9th.
> During that time she told me – she told me that if she didn't do what M.T.M. said that he was going to punish her and he was going to make her feel the pain of watching him kill both of my grandchildren and then he would kill her.

5

*Id.* at 26. Defendant did not object to the hearsay statements attributed to Mother. Further, Defendant did not object to the hearsay within hearsay presented by the statements attributed to Defendant by Mother.

S. R. further testified that, prior to the December 9, 2017 conversation, Mother had told her that Defendant would "grab things, he would break things, punch holes in the walls." *Id.* at 28. She also testified that in August 2017 she observed Mother with a large bruise on her leg that Mother reported Defendant had caused when he pushed her, ripping a safety gate out of the wall. *See id.* at 32, 38. Immediately prior to the Christmas holiday, S. R. reported that Mother and Defendant were residing together again and that there "was a lot of fighting, crying." *Id.* at 28. Neither Plaintiff, nor S. R. , expressed any concern over the safety and well-being of the Children when they were solely in Mother 's care. *See id.* at 16, 35.

During her testimony, Mother denied all allegations in Plaintiff's PFA petitions. *See id.* at 42-43. She also denied that Defendant had been physically violent toward her. *See id.* at 52. Regarding the December 1, 2017 incident, Mother testified that she left the house following a disagreement with Defendant about "principles," related to her iPhone. *Id.* at 53, 56. She further testified that she broke her own iPhone, bending it in half with her hands. *See id.* at 54, 57. Mother testified that S. R. was "incorrect" when she testified regarding the bruising on her leg and the

6

threats reportedly made by Defendant. *See id.* at 52.

While Mother was testifying about Defendant's current incarceration due to a probation violation, her counsel objected to the hearsay statements attributed to Defendant:

> [MS. CORDTS]. Okay. And did you become aware that day – did you hear Mr. – did " M,T.M. say anything to the Court?
>
> MR. STIRBA: Objection.
>
> THE COURT: It would be –
>
> MR STIRBA: If we're talking about what happened in a criminal hearing without a transcript. This is not impeachment. He hasn't testified yet. It's not a prior inconsistent statement. Even if it's not hearsay because we're going to go with the party opponent, it's absolutely irrelevant and possibly very prejudicial.
>
> THE COURT: Well, what – it wouldn't be a party opponent because M.T.M. – how do you say his name?
>
> MR. STIRBA: M.T.M.
>
> THE COURT: He's not a party against her. So how are you going to get past hearsay?
>
> MS. CORDTS: Well, I have M,T.M. here right now so I can ask him.
>
> THE COURT: So you will ask him?
>
> MS. CORDTS: I can ask him.
>
> THE COURT: Okay. The objection, though, is sustained as hearsay.

*Id.* at 48-49. The objection lodged by Mother's counsel concerned hearsay

7

statements attributed to a defendant by a co-defendant, not a party opponent. *See id.* As such, the statements, which did not fall within any other exception to the rule against hearsay, were deemed inadmissible. *See id.*

Defendant testified that he had never harmed or threatened to harm the Children. *See id.* at 58, 63. He stated that he was currently incarcerated in Northampton County Prison awaiting a Gagnon II hearing for allegations that he left the state without permission, consumed alcohol, and failed a drug test. *See id.* at 59.

At the close of testimony, we dismissed Plaintiff's PFA against *Mother* and granted Plaintiff a final PFA against Defendant for a period of three years. *See id.* at 70. Our ruling was based on a credibility determination, namely that Plaintiff's and *S. R.'s* testimony were credible and *Mother's* testimony was not credible. *See id.*

Defendant filed a "Motion for Reconsideration" on January 23, 2018, arguing that, but for the allegedly inadmissible hearsay testimony, Plaintiff's allegations of abuse could not be proven. *See generally* Motion for Reconsideration. Defendant requested that we vacate the final PFA entered against him on January 3, 2018, reinstate the temporary PFA, and set the matter for a new hearing. *See id.* ¶ 20. We granted reconsideration and the

8

parties appeared for argument on Defendant's motion on February 9, 2018.[1]

See Order of Court, T.W., Jr. v. M.T.M. , No. C-48-PF-2017-1104 (C.P.

Northampton Co. Feb. 2, 2018).

## **DISCUSSION**

Defendant argues that the two PFA cases were improperly joined and

that, as a result, the hearsay statements introduced by Plaintiff and S. R.

were improperly admitted against Defendant. *See generally* Motion for

Reconsideration.

At the outset, we note that

> in order to preserve an issue for appellate review, a
> party must make a timely and specific objection at the
> appropriate stage of the proceedings before the trial
> court. Failure to timely object to a basic and
> fundamental error will result in waiver of that issue.
> On appeal the Superior Court will not consider a claim
> to the trial court's attention at a time when any error
> committed could have been corrected. In this
> jurisdiction . . . one must object to errors,
> improprieties or irregularities at the earliest possible
> stage of the adjudicatory process to afford the jurist
> hearing the case the first occasion to remedy the
> wrong and possibly avoid an unnecessary appeal to
> complain of the matter.

*Thompson v. Thompson*, 963 A.2d 474, 475-76 (Pa. Super. 2008) (*quoting*

*Hong v. Pelagatti*, 765 A.2d 1117, 1123 (Pa. Super. 2000)); *see also*

---

[1] Prior to our Order granting reconsideration, Defendant filed a Notice of Appeal to the Superior Court. *See* Notice of Appeal, T.W., Jr. v. M.T.M. , No. C-48-PF-2017-1104 (C.P. Northampton Co. Feb. 2, 2018). Following our Order granting reconsideration, Defendant filed a "Praecipe to Strike Notice of Appeal." *See* Praecipe to Strike Notice of Appeal, T.W., Jr. v. M.T.M., No. C-48-PF-2017-1104 (C.P. Northampton Co. Feb. 28, 2018); *see also* Pa.R.A.P. 1701.

Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Here, Defendant failed to make a timely and specific objection to the consolidation of the PFA cases. *See* T.P. Jan. 3 at 3-4. In fact, defense counsel did not even participate in the discussion regarding a joint hearing. *See generally id.* Therefore, Defendant has waived the issue of consolidation. *See Thompson*, 963 A.2d at 475-76.

Assuming, *arguendo*, that Defendant has not waived this issue, we conclude that it was entirely proper to hear the cases together. While, the Protection From Abuse Act does not specifically provide for consolidation, Section 6117 of the Act contemplates the application of the broader Pennsylvania Rules of Civil Procedure. *See generally* 23 Pa.C.S.A. § 6101 *et seq.; see* 23 Pa.C.S.A. § 6117(a) ("a proceeding under this chapter shall be in accordance with applicable general rules"). Pennsylvania Rule of Civil Procedure Rule 213 provides that

> [i]n actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on its own motion or on the motion of any party may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated, and may make orders that avoid unnecessary cost or delay.

Pa.R.C.P. 213(a). Where the individual cases in a consolidated action involve different parties or different theories of liability, the individual cases retain their separate identities. *See Kincy v. Petro*, 2 A.3d 490, 491 (Pa.

10

2010).

Here, after a brief summary of Plaintiff's allegations, we concluded that the cases were related and would be heard together. *See* T.P. Jan. 3 at 3-4. We based our ruling on the fact that both PFA complaints stemmed from the same alleged incidents, wherein Defendant threatened to harm the Children. *See id.* The same testimony and evidence was necessary in both cases. *See generally* T.P. Jan. 3. Therefore, in the interest of judicial economy and because Plaintiff's claims against *Mother* and Defendant involved common questions of law and fact, we consolidated the cases for a final PFA hearing. *See id.* at 3-4.

Defendant also failed to make timely and specific objections regarding the hearsay testimony admitted against him during the PFA hearing. Initially, Defendant objected to the hearsay statements of *Mother,* as presented by Plaintiff. *See* T.P. Jan. 3 at 7. We ruled that the statements were admissible because *Mother* was a party opponent of Plaintiff. *See id.* Defendant made no further objection as to the scope of the admissibility of *Mother*'s hearsay statements. *See id.;* Pa.R.E. 103 ("A party may claim error in a ruling to admit or exclude evidence only: (1) if the ruling admits evidence, a party, on the record: (A) makes a timely objection, motion to strike, or motion in limine; and (B) states the specific ground, unless it was apparent from the context."). Specifically, Defendant never requested that the hearsay statements only be admissible as against *Mother,* rather than

11

abusive relationship, and that she also related to him verbal threats that he made directly against the children.

THE COURT: I think they're related. I'd like to hear them together.

MS. CORDTS: Very well.

*Id.* at 3-4.

Plaintiff testified regarding an incident that occurred on December 1, 2017 at 1:00 a.m., wherein Mother appeared at Plaintiff's residence with the Children following an altercation between her and Defendant. *See id.* at 6-9. When Plaintiff was asked to relate what Mother had told him about the altercation, Defendant's counsel objected to the hearsay testimony:

[MS. CORDTS]. And what, if anything did she say to you?

MR. DONOHUE: Objection to the hearsay, Judge.

MS. CORDTS: It's –

THE COURT: She's a party opponent. It would be the party opponent exception to the hearsay rule so the objection would be overruled. You can answer.

*Id.* at 7.

Plaintiff testified that Mother told him that there had been an altercation between her and Defendant that evening and that she became fearful. *See id.* Mother also told Plaintiff that Defendant had broken her iPhone and punched holes in the wall. *See id.* Mother showed Plaintiff her iPhone, which Plaintiff described as being "shaped like a horseshoe." *Id.* at

4

both defendants. Further, Defendant did not object to the multiple levels of hearsay presented by Plaintiff's testimony. *See* T.P. at 7. Separately, Defendant did not object to any of the testimony offered by *S. R.* , wherein Mother's hearsay statements were again presented. *See id.* at 26. Given the allegations made in Plaintiff's PFA petition and Ms. Cordts's brief summary of the case at the outset of the hearing, Defendant was on notice that Plaintiff's complaint against him was based entirely on statements Mother made to Plaintiff. *See id.* at 4 ("It came to my client's attention via statements made to him directly by Mother that it had turned into a violent, abusive relationship, and that she also related to him verbal threats that he made directly against the children."). The Supreme Court of Pennsylvania has held that hearsay testimony of a codefendant is competent evidence as against another defendant, where the later failed to object to the hearsay statements at trial. *See Liuzzo v. McKay*, 152 A.2d 265, 266 (Pa. 1959). Because Defendant did not timely object, Defendant is now barred from raising the hearsay issue at this point.

## CONCLUSION

Defendant has waived the issues he now brings before us in his "Motion for Reconsideration." As such, Defendant is not entitled to relief.

**WHEREFORE**, we enter the following:

12

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**
**PFA DIVISION**

T. W., Jr. ,    o/b/o minors,

      **Plaintiff,**

    **v.**

M. T. M.    ,

      **Defendant.**

**No.: C-48-PF-2017-1104**

## ORDER OF COURT

**AND NOW,** this 22nd day of March, 2018, upon consideration of

Defendant   M. T. M.   's "Motion for Reconsideration of Protection

from Abuse Order Dated January 3, 2018," it is hereby **ORDERED** that

Defendant's motion is **DENIED.**

**BY THE COURT:**

_____
**MICHAEL J. KOURY, JR., J.**