J-S49030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: M.N.L, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: Z.S.L., MOTHER | No. 809 EDA 2014 |

Appeal from the Decree January 29, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000588-2013
CP-51-DP-0001627-2012
CP-51-FN-0002629-2011

-----------------------------------------------------------------------------------

| IN THE INTEREST OF: M.S.L, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: Z.S.L., MOTHER | No. 811 EDA 2014 |

Appeal from the Decree January 29, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000587-2013
CP-51-DP-0001628-2012
CP-51-FN-0002629-2011

J-S49030-14

BEFORE:  OLSON, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 29, 2014**

Z.S.L. ("Mother") appeals from the decrees entered on January 29, 2014, in the Court of Common Pleas of Philadelphia County, involuntarily terminating her parental rights to her twin children, M.N.L., a female, and M.S.L., a male (collectively, "the Children"), born in December of 2011.[1]  We affirm.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court ably set forth the factual and procedural history of this case, which we adopt herein. **See** Trial Court Opinion, 4/2/14, at 1-5.[2]

On October 1, 2013, the Philadelphia Department of Human Services, Children and Youth Division ("DHS"), filed petitions for the involuntary termination of Mother's parental rights and petitions for a goal change to adoption.  On January 29, 2014, the trial court held a hearing on the petitions.  Mother did not attend the hearing, but she was represented by counsel.  Mother's counsel stipulated on the record in open court that, if called, the DHS caseworker would testify "substantially similar to the facts" alleged in DHS's petitions.  **See** N.T., 1/29/14, at 8-10.  DHS presented the

_____

[1] By separate decrees entered on the same date, the parental rights of the Children's putative father, S.L., were involuntary terminated.  He did not appeal.

[2] We note that the trial court opinion does not contain pagination.  We have assigned each page a sequential number for ease of reference.

- 2 -

testimony of its caseworker, Leah Allen, and the caseworker from the foster care agency, Teyana Sawyer. In addition, DHS introduced into evidence twenty-three exhibits, without objection. *See id.* at 9, 11. Mother's counsel did not present any evidence.

By decrees dated and entered on January 29, 2014, the court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). By orders the same date, the court changed the Children's placement goal to adoption. Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*.

On appeal, Mother presents two issues:

1. Did the Court erroneously find that proper service was made on [Mother]?

2. Did the Court erroneously fail to find that [Mother] had made some compliance with the Family Service Plan?

Mother's brief at 2.[3]

In her first issue, Mother asserts that she did not receive notice of the filing of the involuntary termination petitions. Mother's issue implicates her guarantee of due process of law under the Fourteenth Amendment to the United States Constitution. "Due process requires nothing more than

---

[3] In her brief, Mother does not assert any error by the trial court with respect to the goal change orders. Therefore, we do not review them.

adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." ***In re J.N.F.***, 887 A.2d 775, 781 (Pa. Super. 2005).

Section 2513(b) provides, in pertinent part:

(b) NOTICE.-- At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require. A copy of the notice shall be given in the same manner to the other parent, putative father or parent or guardian of a minor parent whose rights are to be terminated. . . .

23 Pa.C.S.A. § 2513(b).

At the beginning of the hearing, counsel for DHS introduced into evidence the return of service with respect to Mother, dated January 7, 2014, which counsel and the court together read into the record. ***See*** N.T., 1/29/14, at 4-6, Exhibit A. Thereafter, the following colloquy occurred:

[DHS counsel]: I would ask Your Honor to find on notice.

[Mother's counsel]: No objection.

***Id.*** at 5.[4]

Because Mother's counsel did not object to service during the hearing, we conclude that Mother's first issue is waived. ***See MacNutt v. Temple***

---

[4] Counsel for DHS also stated on the record in open court that this was the third time Mother received notice, as the termination hearing was scheduled for two prior dates, in October and December of 2013. ***See*** N.T., 1/29/14, at 4-6.

*Univ. Hosp.*, 932 A.2d 980, 992 (Pa. Super. 2007) (holding that in order to preserve an issue for appellate review, litigants must make timely and specific objections during trial); *see also* Pa.R.A.P. 302(a). To the extent Mother argues that her counsel's "general objection to the termination of parental rights" was sufficient to preserve this issue, we disagree. Mother's brief at 5. To preserve an issue for appellate review, it is necessary that the litigant make a specific objection during trial. We have explained, as follows:

> In order to preserve an issue for appellate review, a party must make a timely and *specific* objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction . . . one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*Thompson v. Thompson*, 963 A.2d 474, 475-476 (Pa. Super. 2008) (*quoting* *Hong v. Pelagatti*, 765 A.2d 1117, 1123 (Pa. Super. 2000) (emphasis added)). Based upon our review of the record, we conclude that Mother has failed to preserve this issue for appeal. Accordingly, we proceed to Mother's second issue.

Mother argues, in full, that if she "had been given the opportunity to attend the termination hearing, she would have contested DHS'[s] evidence[] regarding her compliance with the FSP [Family Service Plan]

objections and the existence of dependency issues. There was a lack of current evidence regarding [Mother's] alleged drug issue or her alleged mental health issues." Mother's brief at 7.

We review this issue according to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id*.; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 ([Pa.] 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id*.
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is on the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, we conclude that the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows:[5]

_____

[5] *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that this Court need only agree with any one subsection of 23 Pa.C.S.A. § 2511(a), in addition to Section 2511(b), in order to affirm the termination of parental rights).

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental

rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. **In re A.L.D.** 797 A.2d 326, 337 (Pa. Super. 2002).

> With respect to Section 2511(b), the requisite analysis is as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id**. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id**. at 63.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

Upon review, we conclude that the evidence supports the termination of Mother's parental rights pursuant to Section 2511(a)(2) in that Mother's repeated and continued incapacity, neglect, or refusal have caused the Children to be without essential parental care, control or subsistence necessary for their physical or mental well-being. Further, the record demonstrates that the causes of the incapacity, neglect, or refusal cannot or will not be remedied. Indeed, the record reveals that the Children were placed in the custody of DHS in September of 2012. Leah Allen, the DHS

caseworker, testified that Mother's Family Service Plan ("FSP") objectives included "visitation, housing, drug and alcohol, parenting, [and] mental health." N.T., 1/29/14, at 13. Ms. Allen testified that Mother failed to complete any of her FSP objectives. *Id.* at 14. As such, we discern no abuse of discretion by the court with respect to Section 2511(a)(2).

In light of the requisite bifurcated analysis for the involuntary termination of parental rights, we next review the decrees pursuant to Section 2511(b). In *In re T.S.M.*, 71 A.3d 251 (Pa. 2013), our Supreme Court stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond their foster parents." *Id.* at 268. Moreover, the Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." The *T.S.M.* Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.* at 269.

Instantly, Ms. Allen testified that the Children are in a pre-adoptive home. N.T., 1/29/14, at 13. Furthermore, since December of 2012, when the Children were one years old, to the time of the termination hearing, "Mother missed forty-three visits and attended only thirteen." Trial Court

Opinion, 4/2/14, at 7 (citation to record omitted). The trial court made the following findings, which the testimonial evidence supports:

> The foster mother has a maternal bond with the [C]hildren. The [C]hildren seek foster mother to satisfy their needs. No maternal bond exists with the Mother, as [the C]hildren do not call her by any name. The [C]hildren play with their biological Mother as a friend. The [C]hildren do not exhibit any type of sadness when the Mother leaves [after supervised visits].

Trial Court Opinion, 4/2/14, at 8 (citations to record omitted).

Based upon our review of the record, we discern no abuse of discretion by the trial court in concluding that terminating Mother's parental rights "would best serve the developmental, physical, and emotional needs and welfare" of the Children. 23 Pa.C.S.A. § 2511(b). We further observe that the Child Advocate filed a brief in support of the termination decrees. Accordingly, we affirm the decrees terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2014

- 11 -

RECEIV...

2014 APR -2 ... 11:40

PROPERTY

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION**

In Re: M.S.L. aka M.L.                    : CP-51-DP-0001628-2012
                                          : CP-51-AP-0000587-2013
M.N.L. aka M.L.                           : CP:-51-DP-0001627-2012
                                          : CP-51-AP-0000588-2013

APPEAL OF: Z.S.L., Mother                 : 809 EDA 2014; 811 EDA 2014

**OPINION**

**Fernandes, J.:**

Appellant, Z.S.L., ("Mother"), appeals from the orders entered on January 29, 2014, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS"), to involuntarily terminate her parental rights to M.S.L., aka M.L. and M.N.L., aka M.L. ("Children") pursuant to the Adoption Act, 23 Pa.C.S.A. 2511 (a) (1) (2) (5) (8), and (b). Reginald Allen, Esquire, counsel for Mother, filed a timely appeal with a statement of issues presented on appeal to perfect the appeal.

**Factual and procedural background**

A summary of the relevant facts and procedural history is set forth as follows:

This family became involved with the Department of Human Services ("DHS") on September 6, 2012, when DHS received a General Protective Services (GPS) report alleging that Mother ("Z.L.") left her nine month old twin children, M.S.L. aka M.L. and M.N.L. aka M.L. at Baring House Crisis Nursery and it appeared that she did not intend to return for them. The report alleged that Mother was homeless, had left the shelter where she had resided temporarily, and had been residing in various homes since then. Mother last visited the children on August 29, 2012, and had called Baring House Crisis Nursery a few times to inquire about their welfare. The report alleged that Mother fell asleep and left the children unattended during a visit. The report also alleged that when the children arrived at the shelter, they both had a diaper rash and diarrhea; that M.S.L. had eczema and an ear infection for which Mother did not comply with follow-up treatment from his primary care physician; and that M.S.L. was taking an antibiotic for his ear infection when he arrived at Baring House. The children's medical conditions had not worsened because the staff treated them with over-the-counter medications; however, the children needed to be seen by their primary care physician and their medical insurance had lapsed because Mother failed to continue the health insurance. The report alleged that Mother

was unemployed, suffered from depression, and had a substance abuse problem; that Mother appeared to be disconnected and distanced from her children; and that M.S.L. and M.N.L. 's paternal grandmother, was willing to be a caregiver for the children, but needed Mother's permission. This report was substantiated (See DHS Exhibit 1).

DHS' investigation revealed that the family had been involved with DHS in the past after receiving allegations on May 30, 2011, that the children's other sibling, who was two years old, was examined at the emergency room at Children's Hospital of Philadelphia (CHOP) for complaints of difficulty urinating. It was alleged that Mother was incarcerated at the time of the report, and the whereabouts of their father was unknown. DHS learned that Mother was arrested on April 2011 and incarcerated at Riverside Correctional Facility (See DHS Exhibit 2).

On September 7, 2012, paternal grandmother volunteered to care for M.S.L. and M.N.L. DHS obtained an Order of Protective Custody for M.S.L. and M.N.L. The whereabouts of Mother and the children's father were unknown to DHS at the time of placement (See DHS Exhibit 3 & 4).

On September 11, 2012, Ms. Shelton returned the children to Baring House stating that she had a medical matter to attend with her mother. DHS learned that Ms. Shelton went to Atlantic City, which she subsequently admitted, and that the children had diarrhea and ear infections. DHS determined that Ms. Shelton was not an appropriate caregiver for the children.

On September 12, 2012, DHS went to Baring House with the children's paternal aunt, Najah Lawhorn, and took them for medical examinations. DHS placed the children in the care of Ms. Lawhorn that day. On September 13, 2012, Mother tested positive for cannabinoid at the Juvenile Branch of Family Court (See DHS Exhibit 5).

On September 10, 2012, a shelter care hearing was held for M.S.L. and M.N.L. The court lifted the OPC and ordered that the temporary commitment to DHS stand. Mother was referred to the Clinical Evaluation Unit (CEU) for a forthwith drug screen, assessment, and treatment monitoring.

On September 19, 2012, an adjudicatory hearing was held for M.S.L. and M.N.L. The Honorable Edward C. Wright discharged the temporary commitment, adjudicated the children dependent, and committed them to DHS. Judge Wright ordered that Mother was permitted to have weekly supervised visits with M.S.L. and M.N.L. at the office of the placement agency; that the terms of her visits could be modified by agreement of all parties; that Mother be referred to the CEU for a forthwith drug screen, dual diagnosis assessment, and treatment monitoring; and that Mother be referred to the Achieving Reunification Center (ARC) program (See DHS Exhibit 6&7).

On October 16, 2012, the initial Family Service Plan (FSP) was developed. The goal for M.S.L. and M.N.L. was return parent/guardian/custodian. The parental objectives were to participate in evaluation for drug and alcohol abuse; to comply with all drug and alcohol treatment recommendations made by the provider; to sign authorization forms allowing DHS to obtain copies of evaluations and progress reports; to participate in a mental health evaluation; to comply with all mental health treatment recommendations, including therapy and/or medication as prescribed; to sign authorization forms allowing DHS to obtain copies of evaluations and

progress reports; to receive an appropriate medical evaluation; to comply with all recommended medical treatment; to sign authorization forms allowing DHS to obtain medical records with all recommendations; to participate in regular individual/family counseling to address their history of domestic violence; to participate in regular individual counseling; to enroll in training programs; to complete two job applications and attend two job interviews per week; and to attend the ARC and comply with the program. Mother attended the meeting and signed the FSP. Father did not attend or otherwise participate in that meeting. At that time, his whereabouts were unknown to DHS (See DHS Exhibit 8).

In a letter to DHS from the ARC dated November 26, 2012, it was noted that DHS had been informed of Mother's nonparticipation in ARC services on November 14, 2012, and the ARC's efforts to encourage her to reengage with the ARC. As of November 26, 2012, Mother failed to contact and/or report to the ARC for a continuation of services, and as a result, her case with the ARC was closed on November 26, 2012. DHS was encouraged to make another referral to the ARC for Mother if she became available for services in the near future (See DHS Exhibit 10).

On December 7, 2012, Mother had a chemical dependency evaluation with the CEU. It was noted that Mother had tested positive for drugs on September 19, 2012. During the evaluation, Mother reported a remarkable substance abuse history for alcohol, marijuana, Xanax, and Percocet. She reported drinking alcohol since the age of 17 years old, consuming eight shots or two mixed drinks two or three times per month, with her last use occurring in late November 2012. Mother reported drinking a bottle of liquor on a daily basis in September 2012. She reported smoking marijuana since the age of 17 years old, smoking seven blunts on a daily basis, with her last use, which she estimated, occurring in October 2012. Mother reported using Xanax since the age of 21 years old, using the drug ten times in her life, with her last use, which she estimated, occurring in October 2012. Mother reported using Percocet since the age of 23 years old, using the drug five times in her life, with her last use, which she estimated, occurring in October 2012. She denied using any other substances. Mother minimized her substance abuse history due to testing positive for illicit substances on September 19, 2012. Mother reported an unremarkable substance abuse treatment history. The CEU determined that Mother would benefit from a full psychiatric evaluation upon entrance into a treatment program as denoted by her mental health history and status. As of January 15, 2013, clinical staff at the Wedge Recovery Centers-North informed the CEU that Mother had engaged in substance abuse treatment. The CEU diagnosed Mother with cannabis dependence, alcohol abuse, barbiturate, sedative, or hypnotic abuse, opioid abuse, and cocaine abuse. The CEU recommended that Mother remain in intensive outpatient dual diagnosis treatment at The Wedge Recovery Centers with continued stay based on medical necessity criteria. The identified program would provide individual therapy, group therapy, addiction education, life skills training, and 12-step meetings. Random urine screens would also be a part of the treatment milieu (See DHS Exhibit 11).

On December 11, 2012, a Permanency Review hearing was held for M.S.L. and M.N.L. The Court found that there had been minimal compliance with the permanency plan by Mother and that Father was incarcerated at Curran-Fromhold Correctional Facility (CFCF). The Court ordered that a CEU report regarding Mother be incorporated into the court record; that the children remain committed to DHS; that weekly supervised visits with M.S.L. and M.N.L. continued to be offered to Mother; that DHS re-refer Mother to the ARC; that Mother be referred

to the Behavioral Health Center (BHS) for consultation and/or evaluation; that DHS refer Mother to a shelter program when appropriate; and that DHS explore family members as possible placement resources for the children (See DHS Exhibit 13).

On March 13, 2013, a Permanency Review hearing was held for M.S.L. and M.N.L. The court found that there had been no compliance with the permanency plan by Mother and that her whereabouts were unknown. M.S.L. and M.N.L. were ordered to remain committed to DHS and DHS was ordered to complete a Parent Locator Search (PLS) for Father.

In the Quarterly Reports for M.S.L. and M.N.L. from Delta Community Supports for the period of February 19, 2013 through May 19, 2013, it was noted that obstacles to reunification remained. Mother had shown minimal compliance with visiting her children and failed to attend six of twelve scheduled visits with M.S.L. and M.N.L. during that quarter, although Delta Community Supports ensured that she had transportation to and from visits. Mother signed a contract with Delta Community Supports agreeing to attend weekly visits with her children consistently and on time. The children did not appear to be bonded with Mother. When Mother attended visits with M.S.L. and M.N.L., she did not bring anything with her for the children and had only recently begun to bring the children's older sibling, Zaci, to visits. Mother had difficulty focusing on all of her children at once and the Delta Community Supports case manager often had to intercede to prevent potential accidents. It was also noted that Mother had not completed any of her ARC programs. Mother also needed to comply with CEU recommendations for drug and alcohol treatment, complete all court ordered goals, obtain a GED, locate housing, and obtain employment (See DHS Exhibit 16 & 17).

On June 11, 2013, a Permanency Review hearing was held for M.S.L. and M.N.L. The Court found that there has been minimal compliance with the permanency plan by Mother and ordered that supervised visits for Mother and her children continue to occur at the office of the placement agency; that Mother's visits could be modified by agreement of all parties; that Mother comply with mental health and drug and alcohol treatment, the Women's Empowerment program, adult education, parenting classes, and housing referrals; that Mother be re-referred to the ARC; and that Mother be re-referred to the CEU for a forthwith drug and alcohol screen assessment with dual diagnosis consideration.

In the Quarterly Reports for M.S.L. and M.N.L. from Delta Community Supports for the period of May 19, 2013, through August 19, 2013, it was noted that obstacles to reunification remained. Thirteen visits were offered to Mother during that quarter; however, she did not attend any of those visits and last visited M.S.L. and M.N.L. on May 16, 2013. Mother had no contact with the Delta Community Supports case manager from May 22, 2013, to July 24, 2013, and was unresponsive to outreach attempts made by Delta Community Supports case manager from May 22, 2013, to July 24, 2013, and was unresponsive to outreach attempts made by Delta Community Supports. On July 24, 2013, Mother contacted Delta Community Supports requesting visits with her children. Mother confirmed her visits for July 23, 2013, July 30, 2013, and August 6, 2013; however, she failed to attend the visits. Mother had not been working with the ARC to complete her goals, had not found suitable housing or unemployment, and still needed to comply with CEU recommendations for drug and alcohol treatment, complete all court ordered goals, obtain a GED, and obtain employment (See DHS Exhibit 19 & 20).

On August 30, 2013, the FSP was revised. The goal for M.S.L. and M.N.L. was adoption. The parental objectives were to locate and occupy suitable housing for their family with suitable space, heat and all other operable utilities; to participate in an evaluation for drug and alcohol abuse; to comply with all recommendations for drug and alcohol treatment made by the provider; to sign authorization forms allowing DHS to obtain copies of evaluations and progress reports; to achieve and maintain sobriety; to participate in mental health evaluation; to comply with all recommendations for mental health treatment, including therapy and/or medication as prescribed; to stabilize their mental health problems; to reenroll in and regularly attend GED or training programs; to seek and/or maintain regular visits with their children; to meet regularly with the agency worker and comply with the Individual Service Plan (ISP); and to enroll in a parenting program. Mother attended the meeting and signed the FSP (See DHS Exhibit 22).

Mother ("Z.L.") has failed to comply with her FSP objectives to facilitate reunification with her children throughout the life of this case. Mother lacks stable and appropriate housing, lacks income, and has failed to comply with recommendations for substance and mental health treatment. She has also failed to maintain sobriety and consistent and meaningful contact with her children, DHS, and Delta Community Supports since her children's placement. Finally, on January 29, 2014, a Goal Change/Termination of Paternal Rights hearing was held.

**Discussion:**

It should be noted that Mother framed her issues somewhat differently and failed to follow rule 1925 (b) as to provide a concise statement of errors; nevertheless, the issues would be discussed as follows.

On appeal, Mother raises the following issues:

1. Did the trial court err by finding proper service was made as to Mother?
2. Did the trial court fail to find that Mother made some compliance with the Family Service Plan?

23 Pa.C.S.A. §2513 (b) requires at least ten days' notice given to the parent of a minor whose rights are to be terminated, by personal service or by registered mail to his or her last known address or by such other means as the court may require. A copy of the notice shall be given in the same manner to the other parent, putative father or parent or guardian of a minor parent whose rights are to be terminated.

As to the first issue of Mother's appeal, the court found that Mother was given proper notice of the goal change termination hearing scheduled for January 29, 2014. DHS served both parent's subpoenas and notices (N.T. 1/29/14, pgs. 4-5). The return of service is dated January 7, 2014 (N.T. 1/29/14, pg. 5). The subpoena and return of service were introduced into the record as (DHS Exhibit A) without Mother's attorney objecting to its introduction (N.T. 1/29/14, pgs. 5, 8).

Pa. R.A.P. 302 (a) clearly established that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pennsylvania's Superior Court has applied this principle in dependency cases when parties fail to raise a timely and specific objection before the trial court. Hence, the result has been a waiver of that issue on appeal. *In re of S.C.B.*, 990 A.2d 762 (Pa. Super. 2010), *In re R.P.*, 957 A.2d 1205 (Pa. Super. 2008).

In accordance with the record, Mother's attorney did not object to the introduction of the return of service of the subpoena offered by DHS's attorney (N.T. 1/29/14, pgs. 3-5). DHS attorney clearly offered DHS Exhibit 1 and required the court to find notice (N.T. 1/29/14, pg. 5). Nonetheless, Mother's attorney responded "no objection" (N.T. 1/29/14, pg. 5).

The court also found that DHS made reasonable efforts to serve Mother at her last known address. Three different goal change hearings were scheduled on the following dates: October 30th, 2013, December 10th, 2013, and January 29th, 2013. Parent location services were used in each one of the hearings (N.T. 1/29/14, pg. 4-6). Mother's last known address was the same for all three hearings. *In adoption of walker*, 469 Pa. 165, 360 A.2d 603 (1976), the Pa. Supreme Court held that service by mail at the last known address implies a good effort to discover the parents' correct address. Although in the present case, service was even better since it was done by process server on a timely fashion as required by statute to Mother's last known address. Once again counsel for Mother did not object to the introduction of the return of service subpoenas into the record (N.T. 1/29/14, pg. 8). Consequently, Mother has waived her right to raise the issue on appeal. Even if Mother had not waived the issue, it lacks merit since reasonable efforts were made by DHS to serve Mother at her last known address.

Mother's second issue on appeal is whether the trial court fails to find some compliance of the Mother with the Family Service Plan. The level of compliance with the Family Service Plan must be view in the context of the whole case pursuant to 23 Pa.C.S.A. §2511(a) which is the statutory ground for terminating a parent's rights.

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a). The Adoption Act provides the following grounds for involuntary termination:

(a) General rule - The rights of a parent, in regards to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings, to involuntary terminate parental rights, the burden of proof is on the party seeking termination, to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child, or a refusal or failure to perform parental duties. The

standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999).

From the record, the court found by clear and convincing evidence that for a period of six (6) months leading up to the filing of the petition for involuntary termination, the Mother failed to perform her parental duties for the children. The children have been continuously under DHS custody since September 7, 2012, when an order for protective custody was entered (DHS Exhibit 4). The petition for termination of parental rights was filed by DHS on October 1, 2013.

The DHS social worker's testimony established that the Mother left the children at a day care center and never returned to pick them up (N.T. 1/29/14, pg. 12). The agency worker's testimony established that the Mother has not complied with the visitation schedule as required by the Family Service Plan and by court orders. Since December 2012, the Mother missed forty-three visits and attended only thirteen (N.T. 1/29/14, pg. 18). Furthermore, it was established that the Mother during her visitation did not fulfill her parental duties appropriately. Agency social worker normally would intervene to guide and redirect the Mother in performing her parental duties such as feeding, changing diapers and reading to the children (N.T. 1/29/14, pg. 23). The testimony also specified that during visitations the Mother did not appropriately supervise the children. For instance, in one occasion one of the children tried to put a toy into an outlet socket while the Mother was talking on her cell phone (N.T. 1/29/14, pg. 23).

The adoption act at 23 Pa.C.S.A. §2511(a) (2) also includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996). Courts have further held that the implications of the parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of §2511 (a) 2. *In the matter of B.L.W.*, 843 A.2d 380 (Pa. Super. 2004), the court's grave concerns about the father's ability to provide the level of protection, security and stability that his child needed was sufficient to warrant termination. Id. at 388.

DHS social worker's testimony established that on October 16, 2012, the initial Family Service Plan was implemented (N.T. 1/29/14, pg. 13). The objectives were parenting, housing, mental health, employment, drug, alcohol and visitation (N.T. 1/29/14, pg. 13). Mother attended the Family Service Plan meetings and was informed of her objectives through contact with DHS social worker (N.T. 1/29/14, pgs. 16-17).

The Family Service Plans remained the same throughout the case due to the fact that none of the objectives were even completed by Mother (N.T. 1/29/14, pgs. 13-14, 20). Mother did not complete any of the objectives established by the Family Service Plan (N.T. 1/29/14, pg. 17, 20). The courts orders from December 11, 2012, and June 11, 2013, found Mother's compliance with the permanency plan to be minimal. The court orders entered by the court on March 13, 2013, and January 29, 2014, also found no compliance with the permanency plan on Mother's part.

DHS also requested termination of parental rights under 23 Pa.C.S.A. §2511 (a) (5), whereby child may be removed by court or voluntary agreement and is placed with an agency at least six months, conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serve the child's needs and welfare.

The testimony reflects that Mother was provided with reasonably available services, but even with the services the conditions that led to placement of the children were not remedied (N.T. 1/29/14, pgs. 13-14, 20). The children have been in placement since September 7, 2012 (N.T. 1/29/14 pg. 11), after sixteen months Mother is still not able to complete her objectives (N.T. 1/29/14, pgs. 13-14, 17, 20). Adoption is the new goal because it serves the needs and welfare of the children. The children need permanency (N.T. 1/29/14 pg. 17-18).

As to §2511 (a) (8) of 23 Pa.C.S.A., DHS met its burden by clear and convincing evidence that the children have been out of care of the parents for twelve months or more and the conditions leading to the placement still exist and termination would best serve the needs and welfare of the children. The children have been continuously under DHS custody since September 7, 2012, when an order for protective custody was entered (DHS Exhibit 4) and the conditions that led to the children's placement still existed (N.T. 1/29/14, pgs. 13-14, 17, 20). Despite the good faith efforts of DHS to make services available (N.T. 1/29/14, pgs. 15-17), it is in the best interest of the children to terminate both parents' parental rights (N.T. 1/29/14, pgs. 19, 21).

In order to terminate parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love comfort, security and stability. *In re Bowman*, 436 Pa. Super. 647, A.2d 217 (1994). See also *In re adoption of T.T.B.*, 787 A.2d 1007, 1013-1014 (Pa. Super. 2003). Pursuant to 23 Pa.C.S.A. §2511 (b), the trial court must also consider what, if any bond exist between Mother and child. *In Re involuntary termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003).

DHS and the agency social workers' testimonies established that Mother's termination of parental rights is in the best interest of the children (N.T. 1/29/14, pgs. 19, 21). The Mother, even with services being provided, cannot provide the care required by the children (N.T. 1/29/14, pgs. 12-14, 23). On the other hand, the foster parent is able to guarantee children's safety and she is able to provide for the children's needs (N.T. 1/29/14, pgs. 19-20).

Furthermore, the testimony demonstrates that the children would not suffer irreparable harm, if the parental rights are terminated (N.T. 1/29/14, pgs. 17, 21). The foster mother has a maternal bond with the children (N.T. 1/29/14, pgs. 17-18, 21). The children seek foster mother to satisfy their needs (N.T. 1/29/14, pgs. 17-18). No maternal bond exists with the Mother (N.T. 1/29/14, pg. 17), as children do not call her by any name ((N.T. 1/29/14, pg. 24). The children play with their biological Mother as a friend (N.T. 1/29/14, pgs. 17-18). The children do not exhibit any type of sadness when the Mother leaves (N.T. 1/29/14, pg. 24).

The trial court determined that the testimony from both the Department of Human Services social worker and the social worker from the agency was credible. Consequently, the court found it was in the best interest of the children to change the goal to adoption and the bond between Mother and child can be severed without irreparable harm. Furthermore, looking at all the circumstances and considering all explanations offered by Mother, the trial court found that Mother's compliance with her Family Service Plan objectives was lacking and consistently Mother failed to achieve any compliance level higher than minimal throughout the life of the case (N.T. 1/29/14, pg. 20).

**Conclusion:**

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of the parental rights pursuant to 23 Pa.C.S.A. § 2511. Moreover, the court finds that its ruling will not cause irreparable harm and it is in the best interest of the children as the result of testimony regarding the children's safety, protection, mental, physical and moral welfare, to terminate the parental rights of Mother. It should be noted that the court also made a ruling as to §2511 (a) (1), (2), (5) and (8), and the Court Orders reflect such a ruling (N.T. 1/29/14, pg. 26).

Accordingly, the orders entered on January 29, 2014, terminating the parental rights of Mother Z.S.L. should be affirmed.

By the court

J.

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

RE: In the Interest of: M.N.L., aka M.L.　　:APPELLATE #809 EDA 2014
　　　　　　　　　　　　　　　　　　　　　:Docket No.: CP-51-DP-0001627-2012
　　　　　　　　　　　　　　　　　　　　　:Docket No.: CP-51-AP-0000588-2013
　　　　　　　　　　　　　　　　　　　　　:

In the Interest of: M.S.L., aka M.L.　　　　:APPELLATE #811 EDA 2014
　　　　　　　　　　　　　　　　　　　　　:Docket No.: CP-51-DP-0001628-2012
　　　　　　　　　　　　　　　　　　　　　:Docket No.: CP-51-AP-0000587-2013

APPEAL OF: Z.S.L., Mother　　　　　　　　:

## PROOF OF SERVICE

I hereby certify that this court is serving, today Wednesday, April 2, 2014 the foregoing Opinion, by regular mail, upon the following person(s):

Katherine Holland, Esq., Assistant City Solicitor
One Parkway
1515 Arch Street
16th Floor
Philadelphia, Pennsylvania 19102

Reginald Allen, Esquire
7601 Crittenden Street, Unit F12
Philadelphia, Pennsylvania 19118

Lisa Visco, Esquire
1800 JFK Boulevard, Suite 300
Philadelphia, Pennsylvania 19103

Jennifer Santiago, Esquire
100 S. Broad Street, Suite 1419
Philadelphia, Pennsylvania 19110

BY THE COURT:

_____
Honorable Joseph L. Fernandes

# APPENDIX B



# Commonwealth of Pennsylvania
## County of Philadelphia 33202

In the matter of:                                           COURT OF COMMON PLEAS

**Malik Lawhorn and Malayah Lawhorn**
_____
(Plaintiff)                    (Demandante)                                          Term, Yr. _____

vs.

                                                            No. **51-FN-002629-2011**

_____
(Defendant)                    (Demandado)

Sherron Lawhorn
4916 North 12ᵗʰ Street
To: Philadelphia, PA 19141

# Subpoena

_____
(Name of Witness)              (Nombre del Testigo)

1. YOU ARE ORDERED BY THE COURT TO COME TO (El tribunal le ordena que venga a) **Family Court, 1801 Vine Street, Courtroom "M"**, AT PHILADELPHIA, PENNSYLVANIA ON (en Filadelfia, Pennsylvania el) **January 29, 2014**, AT (a las) **9:30** O'CLOCK **AM** .M., TO TESTIFY ON BEHALF OF (para atestiguar a favor de) **Yourself** IN THE ABOVE CASE, AND TO REMAIN UNTIL EXCUSED (en el caso arriba mencionado y permanecer hasta que le autoricen isre).

2. AND BRING WITH YOU THE FOLLOWING (Y traer con usted lo siguiente):
**Termination of Parental Rights hearing**

### NOTICE

If you fail to attend or to produce the documents or things required by this subpoena, you may be subject to the sanctions authorized by Rule 234.5 of the Pennsylvania Rules of Civil Procedure, including but not limited to costs, attorney fees and imprisonment.

### AVISO

Si usted falla en comparecer o producir los documentos o cosas requeridas por esta cita, usted estara sujeto a las sanciones autorizadas por la regla 234.5 de las reglas de procedimiento civil de Pensilvania, incluyendo pero no limitado a las costos, remuneracion de abogados y encarcelamiento.

**6 January 2014 – mvc**

INQUIRIES CONCERNING THIS SUBPOENA SHOULD BE ADDRESSED TO (Las preguntas que tenga acerca de esta Citation deben ser dirigidos o):
ISSUED BY:
        Katherine Holland, Esquire

_____
        (Attorney)                    (Abogado/Abogada)

ADDRESS (Direccion) ___ 1515 Arch Street, 16ᵗʰ Floor ___

TELEPHONE NO. (No. de Telefono) _____ (215) 683-5148 _____

ATTORNEY (Abogado ID#) ___ 311574 ___

BY THE COURT (Por El Tribunal)
JOSEPH H. EVERS
PROTHONOTARY (Protonotario)
PRO
                                        (Clerk)                    (Escribano)

Completed Subpoena must be signed and sealed by the Prothonotary (Room 286 City Hall) before service.

10-200 (Rev. 7/99)



## Commonwealth of Pennsylvania
## County of Philadelphia

In the matter of:

COURT OF COMMON PLEAS

_(Plaintiff)_          _(Demandante)_

_____ Term, Yr. _____

vs.

*Shellon Lawhorn*

No. _____ *33202* _____

_(Defendant)_          _(Demandado)_

# Return of Service

On the _____ 7 _____ day of _____ *JAN* _____, Yr. *2014*,

I, *E. Withers* _____, served with the foregoing subpoena by

(describe method of service): *Received By Resident. Dark Skin Female*
*5'9 185 lbs 40s Black Beret on Head*
*8:25 Am*

I verify that the statements in this return of service are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_____ *1/7/14* _____
Date

_____ _____
Signature

_____ _____
Name of Witness

_____ _____
Name of Person Served

Please serve by January 7, 2014 and return affidavit.
Post if unable to serve.

SUBPOENA NO.

# Commonwealth of Pennsylvania
# County of Philadelphia ‿ 3201

COURT OF COMMON PLEAS

In the matter of:

**Malik Lawhorn and Malayah Lawhorn**

| (Plaintiff) | (Demandante) |
|---|---|

_____ Term, Yr. _____

vs.

No. **51-FN-002629-2011**

| (Defendant) | (Demandado) |
|---|---|

Zakia Lewis
5113 Green Street
To: Philadelphia, PA 19144

# Subpoena

| (Name of Witness) | (Nombre del Testigo) |
|---|---|

1. YOU ARE ORDERED BY THE COURT TO COME TO (El tribunal le ordena que venga a) **Family Court, 1801 Vine Street, Courtroom "M"** , AT PHILADELPHIA, PENNSYLVANIA ON (en Filadelfia, Pennsylvania el) **January 29, 2014** , AT (a las) **9:30** O'CLOCK **AM** .M., TO TESTIFY ON BEHALF OF (para atestiguar a favor de) **Yourself** IN THE ABOVE CASE, AND TO REMAIN UNTIL EXCUSED (en el caso arriba mencionado y permanecer hasta que le autoricen isre).

2. AND BRING WITH YOU THE FOLLOWING (Y traer con usted lo siguiente):
Termination of Parental Rights hearing

| NOTICE | AVISO |
|---|---|
| If you fail to attend or to produce the documents or things required by this subpoena, you may be subject to the sanctions authorized by Rule 234.5 of the Pennsylvania Rules of Civil Procedure, including but not limited to costs, attorney fees and imprisonment. | Si usted falla en comparecer o producir los documentos o cosas requeridas por esta cita, usted estara sujeto a las sanciones autorizadas por la regla 234.5 de las reglas de procedimiento civil de Pensilvania, incluyendo pero no limitado a las costos, remuneracion de abogados y encarcelamiento. |

INQUIRIES CONCERNING THIS SUBPOENA SHOULD BE ADDRESSED TO (Las preguntas que tenga acerca de esta Citation deben ser dirigidas a):

6 January 2014 – mvc

ISSUED BY: Katherine Holland, Esquire

| (Attorney) | (Abogado/Abogada) |
|---|---|

ADDRESS (Direccion) 1515 Arch Street, 16th Floor

TELEPHONE NO. (No. de Telefono) (215) 683-5148

ATTORNEY (Abogado ID#) 311574

BY THE COURT (Por El Tribunal)
JOSEPH H. EVERS
PROTHONOTARY (Protonotario)
PRO

| (Clerk) | (Escribano) |
|---|---|

Completed Subpoena must be signed and sealed by the Prothonotary (Room 266 City Hall) before service.

10-200 (Rev. 7/99)



# Commonwealth of Pennsylvania
## County of Philadelphia

In the matter of:

COURT OF COMMON PLEAS

_____  Term, Yr. _____

(Plaintiff)                    (Demandante)

*Zakia Lewis* vs.

No. _3320/_

(Defendant)                    (Demandado)

# Return of Service

On the _____7_____ day of _____Jan_____, Yr. _2014_,

I, _E. Liters_, served with the foregoing subpoena by

(describe method of service): _Recieved by resident. Tall thru door Said to let in mailslot 8:40AM_

I verify that the statements in this return of service are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_1/7/14_
Date

_____
Signature

_____
Name of Witness

_____
Name of Person Served

10-200 (Rev. 7/99) (Reverse)

## CERTIFICATE OF SERVICE

I, Reginald Allen, Esquire hereby certify that a true and correct copy of the foregoing Appellant's Brief was served on the counsel/persons listed below via either first, class mail, certified/registered mail, overnight mail or electronic filing on June, 2014.

Honorable Joseph Fernandes
1801 Vine Street
Philadelphia, PA 19103

Katherine Holland, Esquire
1515 Arch Street, 16th Floor
Philadelphia, PA 19102

Lisa Visco, Esquire
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19107

Reginald Allen, Esquire                    Date: June , 2014