J-A04043-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| ERICA E. KARLSEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CURTIS L. CASSELL | : | No. 1164 MDA 2025 |

Appeal from the Order Entered August 12, 2025
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2015-02637

BEFORE: PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: APRIL 22, 2026**

Erica E. Karlsen ("Mother") appeals *pro se* from the order which awarded primary physical custody to Curtis L. Cassell ("Father") and partial physical custody to Mother with respect to the parties' daughter, E.K., born in September 2010 ("Child"). We affirm.

Mother initiated the underlying custody action in May 2015 regarding Child and her younger sibling.[1] The trial court summarized the relevant factual and procedural history of this matter, as follows:

> Mother and Father have had a contentious history of co-parenting, especially where it concerns [Child]. The most recent saga began with a hearing [on July 30, 2024,] and the entry of an order on [August 2], 2024. There have been numerous petitions filed by both parties [since then].

---

[1] The younger sibling ("sibling" or "sister"), born in May 2013, is not a subject of the instant appeal.

The evidence at the hearing on July 30, 2024, made it clear that the parties could not co-parent. The conflict between [Child] and Mother was extremely high. She often ran[]away from Mother's home to Father's[,] where he would offer her safe haven, despite the terms of the existing custody order. [The court] felt that the parties' inability to co-parent was empowering [Child]'s behavior. [The court] found Father in contempt as a result of his repeated actions. [The court entered an order on August 2, 2024, wherein it awarded shared legal custody to the parties, primary physical custody to Mother, and partial physical custody to Father. The trial court additionally] ordered that [Child continue individual counseling and, as indicated, to commence] a course of joint counseling [with Mother] to address their issues.

In May of [2025], [Mother] filed numerous petitions . . . for emergency and/or special relief [and contempt]. [The court] did not feel that any of the petitions required emergency relief. Therefore, [the court] construed them as petitions for modification of physical custody and/or contempt. [The court] referred them to the custody conciliator to see if the parties could reach an agreement. When the parties were unable to do so, [the court] scheduled a hearing for August 11, 2025.

[I]n June . . . 2025, . . . Father filed a [*pro se* p]etition for emergency relief. The allegations were serious. Therefore, on June 12, 2025, [the court] held a hearing to ensure the safety of Child. [Mother represented herself *pro se*, while Father was represented by Michael Caruccoli, Esquire ("Attorney Caruccoli").] Father presented evidence that [Child] was resorting to self-harm to avoid being in Mother's care. Child had been committed to a children's psychiatric ward for treatment and monitoring. [Father] also testified that Mother was interfering with that treatment by threatening to bring legal action against the staff for "infringing on her (Mother's) rights[."]

[Child] testified by phone from the hospital. She described an incident on May 15, 2025, where Mother erupted in violence over an insolent remark. She testified that Mother choked her for 30-to-45 seconds and then tried to cover up the marks. Mother also pushed her to the ground in anger, slapped her[,] and pulled her by the hair. [Child] eventually shared the abuse and fear she suffered in Mother's home with school staff. She threatened to kill herself if she had to return to Mother's care. She also admitted

to self-harming behaviors, [namely cutting]. As a result, she was hospitalized for psychiatric care.

Mother denied there was an incident on May 15, 2025. She also downplayed [Child]'s subsequent mental health commitment. She testified that [Child] fabricated the story of abuse and orchestrated her mental health commitment to be able to live with Father.

After hearing the evidence, [the court] entered a temporary order awarding primary physical custody of [Child] to Father, pending the hearing previously set for August 11, 2025. [The court] also directed that all visitation between Mother and [Child] occur in a therapeutic setting with a counselor.

After the entry of the order on June 12, 2025, Mother filed at least [ten] petitions and "emergency" motions requesting various forms of relief. Finding no true emergency based on the pleadings, [the court] entered orders indicating that the issues raised in each petition would be addressed at the custody hearing on August 11, 2025.

On August 11, 2025, [the court] heard testimony from [Child's guardian *ad litem* ("GAL")], Mother, Father, and [Child]. [T]he GAL[ informed the trial court] that Mother and [Child] had been working on their relationship in joint counseling sessions. [The GAL also informed the trial court that, a]ccording to the joint counselor, those sessions had gone well. On the other hand, the GAL explained that [Child]'s individual counselor believed that Child needed more work in her individual counseling before continuing with the joint counseling sessions. [According to the GAL, w]hile the individual counselor felt that joint counseling between Mother and [Child] was crucial, [the counselor] did not believe it was appropriate at the current time. [Neither the individual counselor nor the joint counselor testified at the hearing.]

Mother used the hearing to blame Father for the problems between her and [Child]. She accused him of canceling counseling appointments and supervised visits. Father denied that he acted to thwart the relationship between Mother and [Child]. He testified that any cancelations were due to Mother's continued disregard for his work schedule. He claimed that he had asked Mother to change the appointment times to accommodate his

- 3 -

schedule, but she refused. He contended that he has complied [with] or attempted to comply with everything concerning counseling/therapy sessions. It is Mother who refuses to cooperate, either by refusing to accommodate times or to agree to a therapist who would be covered by Father's insurance. [The court] found Father's testimony on those issues to have been credible.

[Child, then nearly fifteen years old,] testified in [camera in the] chambers[ of the trial court judge]. [Child] explained that her relationship with Mother is difficult. She feels that Mother is emotionally unstable. She told [the court] that she blocked Mother's phone to protect her own mental well-being. Mother would bombard her with calls and overwhelm her with questions and comments about her weight and diet. She likened Mother's contact to being spammed. She stated that she wanted to speak with Mother, but on her own terms. She stated that she loves Mother but that Mother needs to resolve her own issues instead of taking them out on her.

[Child] also described the events that led to her psychiatric hospitalization. She stated that the constant ridicule and butting of heads with Mother ultimately resulted in her taking action to harm herself. She said the last straw was when Mother physically assaulted her on May 15, 2025. That is when she began the self-harming behavior. While she attempted to conceal the marks at school, they were eventually discovered. She told school staff that she would kill herself if she had to return to Mother's home.

[Finally, Child expressed hesitation to having contact with Mother, but ultimately indicated to the trial court that she would be willing to have supervised visits with Mother in a therapeutic environment for short periods of time.]

Trial Court Opinion, 10/20/25, at 3-7 (footnotes and unnecessary capitalization omitted).

At the conclusion of the hearing, the trial court orally addressed each of the sixteen custody factors set forth at 23 Pa.C.S.A. § 5328(a) on the record. *See* N.T., 8/11/25, at 54-56. On August 12, 2025, the court entered an order

awarding primary physical custody of Child to Father and partial physical custody of Child to Mother. Specifically, the order provided in relevant part, as follows:

[1.]b. Father shall have primary physical custody of [Child], subject to Mother's periods of partial physical custody as follows:

i. Every other Tuesday from after school (or 4:00 p.m. if there is no school) until the beginning of school on Friday (or 3:00 p.m. if there is no school).

ii. Such other times as the parties agree. Provided, however, until such time as Mother and [Child] have participated in at least three of the joint counseling sessions referenced below, Mother's periods of partial physical custody shall be as follows:

i. One hour each Wednesday at ABC to commence not earlier than 4:00 p.m. Mother shall be responsible for the costs of any such sessions.

ii. Such other times as [C]hild requests.

* * * *

5. . . . [C]hild shall continue in counseling with her current provider until she is successfully discharged. It shall be Father's responsibility to schedule said appointments and to get Child to and from the counseling sessions. The counseling sessions shall occur at least weekly unless the counselor recommends otherwise. The parties shall share the costs not covered by insurance.

When Child's current counselor feels it is appropriate, Mother and [C]hild shall begin a course of counseling to address the issues in their relationship. It shall be Mother's responsibility to choose a counselor, schedule the appointments, and arrange for transportation of Child to and from said appointments whether with Father or a third party. The parties shall share the costs not covered by insurance.

If [C]hild's current counselor has not recommended joint counseling sessions to begin between Mother and [C]hild by

- 5 -

October 30, 2025, we will hold a hearing commencing at 9:30 a.m. on said date to determine whether said counseling should begin.

Order, 8/12/25, at 1-3.[2]

Mother, acting *pro se*, timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3] The trial court filed a responsive Rule 1925(a) opinion.

Mother raises the following issues for our review:

1. Whether the court abused its discretion by restricting Mother's custodial rights and communication—including limiting contact to one-hour Wednesday visits until joint counseling and prohibiting Mother and the sibling from initiating calls or texts—without adequate findings under 23 Pa.C.S.[A.] §§ 5323(d), 5328(a)?

2. Whether the court abused its discretion by giving determinative weight to [C]hild's individual counselor over the joint counselor's favorable progress reports?

3. Whether the court erred by imposing an October 30, 2025 review date tied to joint counseling contrary to the GAL's input?

4. Whether the court improperly delegated judicial authority to a counselor to decide if/when joint counseling would occur?

5. Whether the court altered custody without making the required findings or analysis under [sections] 5323(d) and 5328(a)?

_____

[2] By separate order, the court dismissed any outstanding petitions for contempt, finding neither party "willfully violated" its orders. Order, 8/12/25. Neither party appealed this order.

[3] After the trial court entered its custody order, Mother filed a petition for emergency relief, which the trial court denied. Mother thereafter filed several additional notices of appeal from the instant custody order and/or the interlocutory order denying her petition for emergency relief. This Court either dismissed the other appeals as duplicative of the instant appeal or quashed them as inappropriately taken from an interlocutory order.

6. Whether the court failed to address Father's misrepresentations/perjury bearing on credibility and the [section] 5328(a) analysis?

7. Whether the trial court erred by permitting Father's counsel to appear and argue without a written entry of appearance under Pa.R.C.P. 1012?

Mother's Brief at 6-8 (issues reordered for ease of disposition).[4]

We review Mother's issues on appeal which pertain to the trial court's custody award according to the following standard and scope of review:

> Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

> In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its

---

[4] We note that Mother identified eight issues in her concise statement. **See** Concise Statement, 8/22/25, at unnumbered 1. However, in her statement of questions involved, Mother identified only seven issues, but attempted to alter several of her issues beyond the scope of those presented in her concise statement. **See** Mother's Brief at 6-8. Furthermore, in the discussion section of her brief, Mother has attempted to further expand her seven issues. **See** **id**. at 15-37. Mother has also attempted to add an eighth issue. **See id**. at 33-35. As Mother's substantial alterations to her issues and her inclusion of an additional issue were nor preserved for our review, we decline to address them. **See** Pa.R.A.P. 1925(b)(4)(ii) (providing that issues not included within the concise statement are waived); **see also** Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested by it").

factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (cleaned up). It is not our function "to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion." *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (cleaned up).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340. When awarding any form of custody, the trial court is required to consider the child's best interests pursuant to the following sixteen factors set forth in section 5328(a):

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[5]

The trial court is required to consider all of the factors listed in section 5328(a) when entering a custody order. *See J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011). As the finder of fact, the trial court determines which factors are most salient and critical in each particular case. *See E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019). After the trial court has reached a decision regarding custody, the court shall delineate the reasons for its custody decision either on the record in open court, or in a written opinion or order. *See* 23 Pa.C.S.A. § 5323(d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the

---

[5] Our General Assembly amended section 5328(a) on June 30, 2025, with an effective date of August 29, 2025. As the subject proceedings occurred before the effective date of the amendments, they did not apply here. *See R.M. v. J.S.*, 20 A.3d 496, 513 n.15 (Pa. Super. 2011) (declining to apply the revised version of a statute in proceedings that concluded in the trial court several months prior to the effective date of the at-issue legislation).

enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013).

In the instant matter, the trial court orally assessed the section 5328(a) custody factors on the record and found that factors (1), (4), (7), (9), (10), and (16) weighed in favor of Father. **See** N.T., 8/11/25, at 54-56. The court determined that factor (6) weighed in favor of Mother. **See id**. Finally, the court found that factors (2), (2.3), (3), (5), (8), and (13) were neutral, and that factors (2.1), (2.2), (11), (12), (14), and (15) were not applicable in this case. **See id**.

In her first issue, Mother purports to challenge the trial court's restriction of her custodial rights and communication with Child absent any finding of parental unfitness.[6] Mother contends that the trial court "gave great

---

[6] We note that, in her concise statement of errors raised on appeal, Mother specifically framed her second issue as a challenge to the trial court's restriction of her custodial time and communication with Child "absent any finding of parental unfitness." Concise Statement, 8/22/25, at 1. In her statement of questions involved, Mother altered the scope of this issue by framing it as a challenge to the trial court's restriction of her custodial time and communication with Child "without adequate findings under 23 Pa.C.S.[A.] §§ 5323(d), 5328(a)." Mother's Brief at 6. In the discussion section of her brief, Mother attempts to further transform her second issue once again, this time to one challenging the trial court's decision to restrict her parental rights by "giving dispositive weight to the Child's preference." **See id**. at 18 (unnecessary capitalization omitted). We decline to permit Mother to alter or change her second issue from the narrow issue she raised in her concise statement. **See** Pa.R.A.P. 1925(b)(4)(ii) (providing that issues not included within the concise statement are waived). Thus, we address Mother's contention that trial court abused its discretion by restricting her custodial time and communication with Child absent any finding of parental unfitness.

weight to . . . safety and mental well-being," ultimately phasing Mother's contact into therapeutic/supervised visitation." Mother's Brief at 19. Mother points out that "nowhere does the court make a finding that Mother is legally unfit or that unsupervised time would place the child at risk of abuse or harm." *Id*.

As explained above, the trial court is required to consider the Child's best interests based on a consideration of the sixteen custody factors set forth in section 5328(a). *See J.R.M.*, 33 A.3d at 652. Indeed, Mother concedes that "Pennsylvania law requires the court to consider and weigh all relevant [section] 5328(a) factors . . .." Mother's Brief at 18. Importantly, none of the section 5328(a) factors requires a finding that a parent is unfit. *See* 23 Pa.C.S.A. § 5328(a). Moreover, Mother points to no legal authority in support of her position that the trial court was required to make a specific finding that she was unfit before it could limit her custodial time or communications with Child. *See* Mother's Brief at 18-20. Accordingly, as Mother provides no support for her claim, we conclude that her first issue merits no relief.

In her second, third, and fourth, issues, Mother purports to challenge the trial court's decision to follow the recommendation of the individual counselor over the recommendation of the joint counselor regarding the joint counseling sessions between Mother and Child. As these issues are interrelated, we will address them together.

As noted previously, at the August 11, 2025 hearing, the GAL informed the trial court that Mother and Child had been working on their relationship in joint counseling sessions, and that according to the joint counselor, those sessions had gone well.[7] However, the GAL related that Child's individual counselor believed that the joint counseling sessions, although crucial, were not appropriate at the current time because Child needed more work in her individual counseling before continuing with the joint counseling sessions. *See* Trial Court Opinion, 10/20/25, at 6. Following the hearing, the trial court entered the subject custody order wherein it awarded the parties shared legal custody, with Father having primary physical custody over Child, and Mother having partial physical custody over Child. *See* Order, 8/12/25, at 1. However, the custody order provided that Mother's periods of partial custody shall initially consist of therapeutic visits for one hour every Wednesday at ABC. *See id*. at 2. Mother's full periods of partial physical custody, as specified in the order, shall begin after she and Child have had three joint counseling sessions. *See id*. at 1-2. The order further provided that the joint counseling sessions would resume when the Child's individual counselor "feels it is appropriate." *Id*. at 3. Finally, the order provided that, if the individual

---

[7] The record reflects that the GAL interviewed both Child's individual counselor and the joint counselor during the week before the subject hearing. *See* N.T., 8/11/25, at 5. Thereafter, the GAL prepared a report which was admitted as Exhibit 1, and testified regarding the recommendations of the counselors, without objection. *See id*. at 5-8.

counselor had not recommended that the joint counseling sessions resume by October 30, 2025, the court would hold a hearing on that date to determine when the joint sessions should resume. *See id*. at 3.

In her second issue,[8] Mother asserts that "the [Child's individual] counselor had minimal contact and excluded joint work; the program therapist with joint sessions supported reunification work." Mother's Brief at 21. Mother argues that the trial court abused its discretion by deferring a core custodial decision to the limited counselor. In Mother's view, the trial court's decision to condition "reunification work on the assent of [the individual counselor,] who had not conducted joint sessions, while not adopting the joint therapist's reunification recommendation, . . . elevates a single provider's limited perspective . . . over the statutory framework." *Id*. at 21-22. Mother argues that the trial court gave "outsized, near-dispositive weight to a provider with limited exposure who excluded joint sessions, while discounting the

_____

[8] Once again, Mother attempts to alter her issue from that initially presented in her concise statement, by expanding the focus and scope of the issue in the discussion section of her brief. In her concise statement and in her statement of questions involved, Mother framed her second issue as a challenge to the trial court's decision to give determinative weight to the recommendation of the Child's individual counselor over the recommendations of the joint counselor. *See* Concise statement, 8/22/25, at unnumbered 1; *see also* Mother's Brief at 7. However, in the discussion section of her brief, Mother refocuses her claim to the trial court's "allow[ance] of the Child's reluctance to control decisions." Mother's Brief at 21 (unnecessary capitalization omitted). Accordingly, we limit our review to the issue as preserved in Mother's concise statement. *See* Pa.R.A.P. 1925(b)(4)(ii); *see also* Pa.R.A.P. 2116(a).

- 14 -

therapist who conducted multiple joint sessions and recommended communication-focused counseling." *Id*. at 22.

In her third issue, Mother claims that the imposition of a review date on October 30, 2025, "conflicts with the GAL's position favoring clinically guided reunification (informed by the joint therapist's observations) rather than a calendar-driven checkpoint . . .." *Id*. at 24. Mother argues that "[t]he court did not explain why it departed from the GAL's position or how a fixed date— rather than [C]hild's demonstrated readiness under a structured reunification plan—served [C]hild's best interests." *Id*. at 25.

In her fourth issue, Mother claims that, by permitting the individual counselor to decide when Child is ready to resume joint counseling with Mother, the trial court improperly delegated its judicial authority to the individual counselor. According to Mother, "[w]hile the court may consider expert and provider input, it may not delegate its decision-making authority to an evaluator, counselor, or GAL." *Id*. at 26. Mother claims that the court's "directive installs the therapist as a gatekeeper who decides if and when joint counseling . . . may occur [and] conditions a key component of custody implementation on a non-judicial provider's unilateral approval, rather than on the court's own best-interest findings." *Id*.

The trial court considered Mother's second, third, and fourth issues and determined that they lacked merit. The trial court reasoned:

> [The court] served as the finder of fact at the custody hearing. [The court was] free to believe all, part or none of the

testimony. [The court was] not required to accept the opinions and recommendations of any alleged expert. This is especially true when, as here, those experts did not issue a report or testify in person. [The court notes that the GAL added little of her own input or assessment. She merely articulated the information given to her by the providers.] While [the court was] required to consider all relevant and competent evidence presented by the parties, it was also [the court's] duty and prerogative to make credibility determinations. Based on the evidence presented at the hearing, and [the court's] consideration of the custody factors, [the court] fashioned a final custody order designed to serve [Child's] best interests as well as her safety under the existing circumstances.

Trial Court Opinion, 10/20/25, at 9-10, n.33 (footnotes and citations omitted).

Based on our review, we discern no abuse of discretion by the trial court in adopting the recommendation of the individual counselor to temporarily pause the joint counseling sessions between Child and Mother. As explained above, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. *See Rogowski*, 291 A.3d at 60-61. As the trial court explained, neither the individual counselor nor the joint counselor testified at the hearing. Further, neither counselor was qualified as an expert, and neither counselor prepared or submitted an expert report for the trial court's review or consideration. Instead, the recommendations of the two counselors were relayed to the trial court on a second-hand basis by the GAL, who offered little input or assessment. Indeed, the record reflects that the GAL did not offer any independent opinion or information. *See* N.T., 8/11/25, at 5-8. Thus, the

trial court was permitted to assess the recommendations provided by the counselors, as related by the GAL, and to decide what weight should be accorded to those recommendations.

The fact that the trial court agreed with the individual counselor's recommendation after hearing the evidence and testimony of the witnesses, including the testimony of Child, and therefore placed greater weight on the individual counselor's recommendation, was entirely in its prerogative as the fact-finder. *See Rogowski*, 291 A.3d at 60-61; *see also A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (holding that the parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child). Thus, the fact that the trial court accorded greater weight to the recommendation of the individual counselor does not constitute an abuse of discretion.

Moreover, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. *See Rogowski*, 291 A.3d at 60-61. In this regard, we conclude that the findings of the trial court are supported by competent evidence of record. Here, the trial court noted that its decision regarding the temporary cessation of joint counseling between Child and Mother was guided, in large part, by Child's safety and mental health needs. *See* Trial Court Opinion, 10/20/25, at 11. The trial court was particularly concerned by the fact that "[C]hild had repeatedly expressed to anyone who

would listen that she would hurt herself, possibly even kill herself, if she were forced to return to Mother's home under the current circumstances." *Id*. The trial court determined that "[u]ntil the underlying causes for [Child's] feelings were addressed by a professional, . . . [her] best interests would be better served by phasing in the visitation/reunification between [Child] and Mother with visits occurring in a therapeutic setting or through a professional supervisor." *Id*. Thus, as the findings of the trial court are supported by competent evidence of record, we leave them intact.

Finally, we conclude that the trial court did not improperly delegate its custodial decision-making authority to the individual counselor. *See C.W. v. K.A.W.*, 774 A.2d 745, 749 (Pa. Super. 2001) (holding that in a non-jury custody trial, the role of the judge is to interpret the law, determine the facts, and apply the facts to the law for an eventual decision of the controversy; however, the court may not delegate its judicial powers). In its custody order, the trial court awarded the parties shared legal custody, with Father having primary physical custody over Child, and Mother having partial physical custody over Child. *See* Order, 8/12/25, at 1. The court also ordered that: Child would continue with her individual counseling; Mother's partial visitation would initially be limited to one hour per week; the joint counseling sessions would resume when the individual counselor determined that such sessions were appropriate based on Child's progress; and that Mother's full periods of

partial custody, as awarded in the order, would resume after three joint counseling sessions. *See id*. at 1-3.

Contrary to Mother's assertion otherwise, the trial court did not delegate any decision regarding *custody* to the individual counselor. Rather, the trial court merely temporarily deferred the resumption of the joint counseling sessions until such time as the individual counselor felt that the Child was ready for such sessions to resume, or the trial court made a determination regarding joint counseling. *See id*. at 3. Thus, as we discern no abuse of discretion by the trial court, Mother's second, third, and fourth, issues merit no relief.

In her fifth and sixth issues, Mother challenges the trial court's factual findings in relation to its custody decision. As these issues are interrelated, we will address them together.

In her fifth issue, Mother claims that the trial court entered its custody award without making the required findings or analysis under sections 5323(d) and 5328(a). In advancing her claim, Mother initially points to the trial court's oral statements regarding the reasons for its custody decision at the August 11, 2025 hearing. In Mother's view, the court's on-the-record analysis of the custody factors was "deficient" and "inadequate." Mother's Brief at 28. Mother asserts that "[s]everal factors are lumped together, dismissed as 'neutral,' or skipped entirely, and many conclusions lack evidentiary support or conflict with the record." *Id*. Mother points to each

custody factor, and claims that the trial court should not have found the factors to weigh in favor of Father or to be weighted as neutral, and should have instead weighed several factors in her favor. *See id*. at 28-31. Mother variously claims that the trial court ignored evidence that: "Father repeatedly blocked communication and undermined co-parenting;" "two PFAs against Father and a contempt finding for violating one of them;" "Father cancelling sessions and refusing coordination;" "Father's violations and manipulation of custody orders;" "Mother facilitated family relationships, while Father isolated [C]hild from her sibling;" "separation [of Child] from her full sibling, with no effort by Father to maintain contact;" "documented manipulation by Father, including telling [C]hild she could refuse 'therapy' and that she might be placed in foster care;" "Father withheld dietary and treatment information and acted independently of both Mother and professionals;" "Father's testimony that he could not modify his schedule to accommodate therapeutic appointments;" and "the court . . . found Father in contempt for interfering with custody." *Id*. Mother additionally claims that the trial court gave great weight to Child's wishes, but made no finding regarding Child's maturity or reasoning ability. *Id*. at 29. Mother submits that the GAL report shows that "[C]hild's statements were based on misinformation and emotional instability. *Id*.

In her sixth issue, Mother asserts that the court disregarded contradictions between Father's testimony and the documentary evidence.

*See id*. at 36-37. As such, she asserts that the court should not have credited Father's testimony regarding whether he discussed the custody action with Child, and cancelled Child's therapy appointments. *See id*. at 36.

In this case, the court considered each of the section 5328(a) custody factors and articulated on the record whether it found each factor to weigh in favor of Father or Mother, or whether it found the factor to be neutral or inapplicable to the instant proceedings. *See* N.T., 8/11/25, at 54-56. The trial court further explained the basis for its custody award, as follows:

> [The court] gave great weight to the factors concerning [Child]'s safety and mental well[-]being. [The court] specifically found that Father was more likely to ensure the safety and well-being of [Child]. In [the court's] opinion, [Father] was genuinely concerned for the welfare of [C]hild. On the other hand, we found Mother's primary concern was winning the conflict with Father and maintaining control over [Child]. In light of the long-running conflict between [Child] and Mother, we concluded Father was better suited to provide the stability necessary to protect her safety, as well as to maintain a loving and nurturing relationship that is adequate for her needs.
>
> [Child]'s obvious mental health needs were also a weighty factor in Father's favor. [The court] believed that those needs coupled with Mother's inability to address them in a healthy way dictated that [Child] live primarily with Father. [C]hild had repeatedly expressed to anyone who would listen that she would hurt herself, possibly even kill herself, if she were forced to return to Mother's home under the current circumstances. Whether her feelings were justified was of no moment because [the court] found that they were real. Until the underlying causes for her feelings were addressed by a professional, [the court] believed it was not in [Child]'s best interest to return to the primary custody of Mother. Instead, [the court] found that her best interests would be better served by phasing in the visitation/reunification between [Child] and Mother with visits occurring in a therapeutic setting or through a professional supervisor. [The court] further ordered

- 21 -

that family therapy between Mother and [Child] could resume when [Child]'s individual therapist deemed it appropriate.

Trial Court Opinion, 10/20/25, at 10-11 (footnotes omitted).

Based on our review, we discern no abuse of discretion by the trial court in reaching its custody determination. At their core, Mother's fifth and sixth issues dispute the trial court's determinations regarding credibility and weight of the evidence. In essence, Mother seeks to have this Court re-weigh the evidence and/or re-assess the credibility of witnesses in her favor. This we cannot do. **See Rogowski**, 291 A.3d at 60-61. Instead, we must consider whether, based on the evidence presented, and giving due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion. **See King**, 889 A.2d at 632.

Here, the trial court noted that "neither [Father nor Mother] was entirely truthful in his/her testimony," but that "neither's testimony was willfully false." **See id**. at 9 n.34. Nonetheless, the trial court credited Father's testimony that: "he [did not] thwart the relationship between Mother and [Child];" "any cancelations were due to Mother's continued disregard for his work schedule;" "he had asked Mother to change the appointment times to accommodate his schedule, but she refused;" "he has complied [with] or attempted to comply with everything concerning counseling/therapy sessions;" and "[i]t is Mother who refuses to cooperate, either by refusing to accommodate times or to agree to a therapist who would be covered by Father's insurance." **Id**. at 6-7. On the other hand, the trial court concluded that "Mother used the hearing

- 22 -

to blame Father for the problems between her and [Child]." *Id*. at 6. As we must defer to the trial court's credibility determinations, particularly where the court has observed the witnesses first-hand, we decline Mother's request to reweigh the testimony provided by Mother and Father. *See Rogowski*, 291 A.3d at 60-61.

With respect to Child's testimony, contrary to Mother's assertion otherwise, the trial court did make findings regarding Child's maturity and judgment. In this regard, the trial court found Child, then nearly fifteen, to be "incredibly well-spoken" and "mature." N.T., 8/11/25, at 52, 62. While we recognize that a child's preference is not controlling, it is nonetheless an important factor that must be carefully considered by the trial court in determining the child's best interests. *See Bovard v. Baker*, 775 A.2d 835, 840-41 (Pa. Super. 2001); *see also E.B. v. D.B*, 209 A.3d 451, 468 (Pa. Super. 2019) (noting that, as children grow older, more weight must be given to the preference of the child). Here, given Mother and Child's difficult relationship and Child's mental health and safety concerns, the record amply supports the trial court's decision to afford greater weight to those factors related to Child's well-being, safety, and stability, and, ultimately, her preference. *See E.B.*, 209 A.3d at 460, 468.

To the extent Mother asserts that the trial court's consideration of the best interest factors lacked detail and specificity, the record reflects that the court considered each of the section 5328(a) custody factors and articulated

on the record whether it found each factor to weigh in favor of Father or Mother, or whether it found the factor to be neutral or inapplicable to the instant proceedings. *See* N.T., 8/11/25, at 54-56. As indicated *supra*, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M.*, 63 A.3d at 336. Thus, this aspect of Mother's claim merits no relief.

In sum, after a thorough review of the record, we conclude that the trial court did not abuse its discretion with respect to its analysis of the custody factors under section 5328(a). The court carefully and thoroughly considered Child's best interests, and the record evidence supports the court's custody decision. *See A.V.*, 87 A.3d at 820 (explaining that this Court's interference is unwarranted where the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion). Therefore, Mother's fifth and sixth issues merit no relief.

In her final issue, Mother argues that the trial court erred by allowing Father's counsel to appear and present oral argument in the absence of a written entry of appearance, as contemplated by Pa.R.Civ.P. 1012. Preliminarily, we must determine whether Mother preserved this issue for our review. In order to preserve an issue for appellate review, a party must promptly bring the issue to the trial court's attention. *See Hong v. Pelagatti*, 765 A.2d 1117, 1123 (Pa. Super. 2000). On appeal, this Court will not

consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. ***See id*.; *see also*** Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Here, our review of the record indicates that Father's counsel appeared at the hearings conducted on June 12, 2025, and August 11, 2025. Our further review of the transcripts from those hearings confirms that Mother failed to object to counsel's representation of Father on the basis that counsel had not entered his appearance. ***See*** N.T., 8/11/25; ***see also*** N.T., 6/12/25. Accordingly, as Mother failed to preserve her final issue for appellate review, it is waived. ***See Hong***, 765 A.2d at 1123; ***see also*** Pa.R.A.P. 302(a).[9]

For the foregoing reasons, we conclude that none of Mother's issues merits relief. Accordingly, we affirm the trial court's order.

Order affirmed.

---

[9] Even if Mother's final issue was not waived, we would conclude that it is meritless. Rule 1012 provides that "[a] party ***may*** enter a written appearance which shall state the address at which pleadings and other legal papers may be served . . . along with a telephone number." Pa.R.C.P. 1012(a) (emphasis added). However, "***entry of a written appearance is not mandatory***." Pa.R.C.P. 1012, Note (unnecessary capitalization omitted); ***see also Mazzuca v. Abreu***, 310 A.3d 775, 783 (Pa. Super. 2024) (explaining that "[a]lthough Rule 1012 provides that an attorney 'may' enter a written appearance, it does not require an attorney to do so").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/22/2026